· JOSEPH INMAN RICHARDSON v. E. H. JENNINGS.

(Filed 20 December, 1922.)

**Easements—Deeds and Conveyances—Covenants—Breach—Lakes—Boating and Fishing—Servient Tenement—Dominant Tenement—Actions.**

A deed to a lot of land, included in a large tract thereof developed into a summer resort, whereon a large lake had been made by damming a stream flowing through it, that has a covenant running with the land giving the owner upon its banks, and his successors in title, the right of boating, fishing, bathing, etc., creates an easement in favor of the grantee and his successors in title, constituting the said property of the grantor the servient and that of the grantee the dominant tenement in reference to the rights and privileges described and specified in the instrument; and in the absence of an express agreement in the instrument, the owner of the servient tenement is not bound to maintain such easement or keep it in repair; and where the dam has been later swept away by an unusual and unprecedented rainfall in this vicinity, no cause of action lies in favor of the grantee in the deed to compel the grantor to rebuild the.dam, or to recover damages for being deprived of the benefits he had acquired under the covenants in the deed.

APPEAL by plaintiff from *Calvert, J.,* at the July Term, 1922, of TRANSYLVANIA.

At close of plaintiff's evidence, on motion, there was judgment dismissing the action as in case of nonsuit under C. S., 567, and plaintiff excepted and appealed.

*Martin, Rollins & Wright for plaintiff.*
*Merrimon, Adams & Johnston for defendant.*

HOKE, J. From the facts in evidence it appears that heretofore the Toxaway Company, predecessor in title of defendant, owning an extensive body of land in this vicinity, built thereon and operated a large hotel, and in addition, and as an accessory to this improvement, constructed a dam nearby, across Toxaway River, the same being 60 feet high, 400 feet from bank to bank, and 200 feet thick at the bottom and 12 to 15 feet wide at the top, sloping on both sides, built of earth and resting on a rock foundation. That the artificial lake thus formed had a shore line of some thirteen miles, with a driveway around the greater portion, the road being also across the top of the dam, which had been in existence for several years. That in 1912, the defendant having acquired the title of the Toxaway Company, sold and conveyed to Hugh Richardson a lot containing four acres abutting on the shore line of said lake for a distance of 884 feet. That on or about the same time defendant sold and conveyed to other persons lots of similar kind abutting on said lake, and all of these deeds contained certain restrictive covenants

on the part of the respective grantees as to the extent and character of the improvements that could be placed on the same, and including a stipulation that these covenants should attach to and run with the land, giving to the grantors or any of the adjacent owners a right of action in case of breach. And each and all of them having covenants purporting to bind the defendant grantor in these deeds, these latter being in terms as follows:

"And the said parties of the first part, for themselves, their heirs and assigns, agree and covenant that the said party of the second part, his heirs and assigns, shall have the right and privilege of enjoying the use of the waters of Lake Toxaway for the purpose of boating, fishing, and swimming, and may also take water from said lake for domestic purposes, provided that all fishing in said lake shall be governed by the laws of the State and such rules and regulations as may be prescribed by the said party of the first part, their heirs and assigns, for the protection and propagation of the fish in said lake, and it is further provided that the maximum catch of fish shall not be restricted to less than five fish per day.

And said party of the second part, his heirs and assigns, shall have the right to build and maintain a pier along the shore line of said lot which said pier shall not project more than twenty-five feet into the waters of said lake, and may also build and maintain a boat house along the shore line of said lot, which said boat house shall not project more than thirty-five feet into said Lake.

And it is further mutually agreed and understood that the said parties of the first part, their heirs and assigns, shall have the full right and power to raise the main level of the waters of Lake Toxaway, not to exceed eighteen inches, vertically above its present level, and shall also have the right to lower said water level not to exceed twelve inches vertically, below said main level of said lake, said raising or lowering of the water level is for the purpose of utilizing the water power which may be derived from said lake."

That said Hugh Richardson, observing the restrictive stipulations of his deed, made extensive improvements on the property bought by him, at a cost approximating $20,000, and occupied same as his summer home until 1916, using and enjoying the stipulated easements and privileges of the lake as contained in his deed, and on 31 May, 1916, he sold and conveyed the lot and improvements to present plaintiff, the *habendum* in part being: "To have and to hold the above described lot, and every part and parcel thereof, with the appurtenances thereunto belonging, including all right, title, easements, privileges and estate in the use of the waters of Lake Toxaway, as set out in the deed from defendant, and subject to the restrictive stipulations in this last mentioned deed."

RICHARDSON *v.* JENNINGS.

That in August, 1916, during the floods of that season, caused by unusual and unprecedented rainfall in this vicinity, the said dam across Toxaway River was washed away and destroyed, and defendant has thus far failed and refused to rebuild same, to plaintiff's great damage. The grievances alleged and the resultant injuries being stated in the complaint as follows: "That the plaintiff has at various and divers times requested said defendant to rebuild said dam, and to restore said lake, which the defendant has failed, neglected, and refused to do. That said plaintiff, by reason of the covenants, agreements, and conditions mentioned in said deed of conveyance, and by reason of the advantages, pleasures, and benefits offered by the existence of said lake, spent large sums of money in the development and improvement, and in beautifying said property; that by reason of the carelessness, negligence, and indifference of the defendant in his failure to keep and maintain said lake, which were fully set forth in said deed of conveyance, and is now denied and deprived of the privileges, rights, and easements in said lake, which were fully set forth in said deed of conveyance, and is deprived of the right of boating and crossing said lake, and using the same as a convenient means of access to her property, and of bathing, fishing, and swimming therein, and is also deprived of the use of the waters of said lake for domestic purposes, and the benefits and enhancement to the value of said property fronting immediately on and adjacent to said lake."

And judgment is thereupon prayed that defendant be required to restore said dam, and that plaintiff have all other and further relief to which she may be entitled. On this, a sufficient statement to a proper apprehension of the questions chiefly presented, we must approve of his Honor's ruling in directing a nonsuit.

In our opinion it is the force and effect of this deed from defendant to Hugh Richardson to create an easement in defendant's property in favor of the grantee and his successors in title, constituting said property the servient, and that of the grantee the dominant tenement in reference to the rights and privileges as described and specified in the instrument. This being true, it is the rule very generally accepted that unless by virtue of express agreement, the owner of the servient tenement, here the defendant, is not bound to maintain such easement or keep same in repair. *City of Bellevue v. Daley,* 14 Idaho, 545; *Oney v. West Buena Vista Land Co.,* 104 Va., 580; *Bartlett v. Peasely,* 20 N. H., 547; *Huntington v. Absher,* 96 N. Y., 604; Jones on Easements, sec. 822; 14 Cyc., 1209; 9 R. C. L., title Easements, sec. 57. In this last citation the position is stated as follows: "The owner of land which is subject to an easement requiring the maintenance of means for its enjoyment is not bound unless by virtue of some agreement to keep

such means in repair or to be at any expense to maintain them in proper condition."

The principle is fully recognized with us, as shown in *Lamb v. Lamb,* 177 N. C., 150, where it is said to be "undoubtedly the general rule that in the absence of contract stipulation or prescriptive right to the contrary, the owner of an easement is liable for costs of maintenance and repairs where it exists, and is used and enjoyed for the benefit of the dominant estate alone."

Under these and other authorities of like kind, defendant not being bound to maintain this dam or be at any expense concerning it, cannot be required to replace it when washed away and destroyed by unusual and unprecedented floods. *Rector v. Power Co.,* 180 N. C., 622. No more can he be held liable for any omissive neglect in respect to it.

We must, therefore, as stated, uphold his Honor's decision that on the facts presented no cause of action has been shown, and the judgment of nonsuit is

Affirmed.