CHARLES B. TODD AND WIFE, JEAN W. TODD, v. HARVEY S. WHITE, AND JOHN C. QUICKEL AND WIFE, ALICE M. QUICKEL, AND ALVIN E. WITTEN AND WIFE, MERYL S. WITTEN, ON BEHALF OF THEMSELVES AND ALL OTHER RESIDENTS AND PROPERTY OWNERS IN FAIRMOUNT PARK.

(Filed 10 April, 1957.)

**1. Dedication § 3: Deeds § 15—**

The principle that when the owners of a tract of land subdivide it and convey lots therein by deeds referring to a registered map showing streets and parkways, etc., the owners dedicate such streets and parks to the use of the purchasers and those claiming under them, and also, under certain circumstances, to the public, does not apply when the owners, by unambiguous language, reserve to themselves, their heirs and assigns, title and control of streets and parks, which are not adjacent or necessary to the full enjoyment of the lots conveyed, with right to change, alter or close same.

**2. Appeal and Error § 1—**

It is not necessary for an appellate court, after having determined the merits of the case, to examine questions not affecting decision reached.

APPEAL by plaintiffs from *Campbell, J.*, December Term, 1956, of GASTON.

Suit for specific performance of contract to purchase land.

Plaintiffs, being under contract to convey to the defendant White a tract of land in the City of Gastonia, tendered deed in accordance with the contract. The defendant White refused the tender and declined to make payment of the purchase price, claiming that the premises, or a portion thereof, are burdened with easements for street and park purposes.

The named defendants, other than Harvey S. White, are property owners in a lot subdivision known as Fairmount Park. None of them filed answer. However, Stahle Funderburk, on behalf of himself and other residents of the subdivision, filed answer denying the material allegations of the complaint and averring that the *locus in quo* is subject to street and park easements.

Jury trial was waived and it was agreed that the trial judge should find the facts, make his conclusions of law, and enter judgment.

Most of the pertinent facts were stipulated. They are set out in substance in the following numbered paragraphs:

1. In 1921, D. B. Hanna and wife, Minnie E. Hanna, being the owners of a large tract of land located in Gaston County, caused it to be subdivided into lots and streets. A map of the subdivision, known as Fairmount Park, was registered in 1921 in the Public Registry of Gaston County. In the year 1922 a revised map of the subdivision was prepared and registered by Hanna and wife. The revised map is identical with the original map, except that on the first map the Park area in controversy is designated as "Park," whereas on the revised map the same Park area is shown as "Park—Subject to Revision." The street area in controversy is in the shape of a street which encircles and borders the Park area on two sides and one end. On both maps this street area in one section is designated "Park Drive," in the other it is designated "Park Avenue." Thus the land in controversy composes as one tract the Park area and also the foregoing sections of the street bordering the Park area. The tract is located in the southwestern part of the subdivision.

2. After the original map was registered in 1921, D. B. Hanna and wife by 22 separate deeds conveyed 31 of the lots by reference to this map. The nearest of these lots is approximately 600 feet from the Park and street area in controversy.

3. In each of the foregoing conveyances D. B. Hanna and wife included certain covenants, restrictions and reservations, consisting of 13 numbered paragraphs, only one of which, Number 12, appears to be pertinent to decision. This paragraph is set out verbatim in the opinion of the Court.

4. At least one of the defendants in this cause, namely, Van A. Covington, Sr. (an additional party defendant who was permitted to adopt the Funderburk answer), holds title to property in the subdivision under a deed from D. B. Hanna and wife, with the description being by reference to the original map registered in 1921.

5. D. B. Hanna and wife have conveyed away all lots shown on the maps of the Fairmont Park subdivision. After the revised map was registered in 1922, all conveyances by the Hannas of such lots were made by reference to the revised map. And in the deeds so made the same restrictions and reservations were included as were in the first series of deeds which made reference to the original map registered in 1921.

6. By quitclaim deed dated 4 May, 1926, and registered in the Public Registry of Gaston County, D. B. Hanna and wife conveyed to J. Y. Todd the property in controversy embracing the Park area and the portions of Park Drive and Park Avenue adjacent thereto.

7. That by deed dated 23 August, 1951, duly registered, J. Y. Todd and wife conveyed to the plaintiffs Charles B. Todd and wife, Jean W. Todd, the Park-street area in controversy, described in the complaint.

8. Thereafter, Charles B. Todd and wife, together with J. Y. Todd and wife, executed a Declaration of Withdrawal from Public Use of the Park-street area in controversy, pursuant to Section 136-96 of the General Statutes of North Carolina. This instrument, copy of which is attached to the complaint, was registered 4 November, 1954.

9. "That none of the land in controversy . . . is necessary for purposes of ingress, egress or regress by any of the defendants in this action, or by any of the property owners" in the subdivision.

10. That "Park Avenue" or "Park Drive" where it borders on the Park area on the south was never opened or used as a street; that during the year 1945 a new subdivision was established known as Glendale, which includes a small portion of Fairmount Park not involved in this controversy, but in platting the Glendale subdivision, and in later opening the streets as contained therein, a street known as Woodlane Drive or Woodlawn Drive was opened. This street covers a portion of Park Drive and likewise a portion of the Park area shown on the maps of Fairmount Park. Woodlawn or Woodlane Drive is now a paved street within the street system of the City of Gastonia.

11. That the land in controversy lies within the corporate limits of the City of Gastonia, and was within the limits of the City in 1921, when Fairmount Park was first platted; that the City of Gastonia has never accepted the Park area as a public park in the Park System of the City; that the Park area has been listed for taxes by Charles B. Todd and wife, and their predecessors in title, namely, J. Y. Todd and wife, since the acquisition of the property by J. Y. Todd and wife from D. B. Hanna and wife by the quitclaim deed. The portion of the Park area adjacent to Woodlane or Woodlawn Drive was assessed for paving when that street was paved by the City of Gastonia, and J. Y. Todd and Charles B. Todd have paid the paving assessments. (Note: the testimony discloses that these assessments amounted to about $5,000.)

Both sides offered testimony as to the uses made of the controverted Park-street area since 1926, when it was quitclaimed by Hanna and wife to J. Y. Todd and wife. According to the plaintiffs' evidence, the area was enclosed by a three-strand barbed wire fence from 1927 until about 1942 and used for a while as a horse and cow pasture by the Todds, who resided just north of the enclosure. It was and is "principally a wooded area." The Todd children played in the enclosure and along a branch that ran through it, and other children were invited and came and played with them. At one time there was an out-door furnace, with shed over it, built and used by the Todds. The area is now grown up in trees and weeds. In early years the Todds put up No Trespass signs. "The area has never been opened or used by anyone

for Park purposes," and the major portion of it remains in its natural state.

One of the defendants testified that his children at times have played in the Park area—"various childrens games, cowboys and Indians, etc," and that he on occasions has tramped through it. Other witnesses testified that children were seen playing in the wooded Park area from time to time.

The trial judge entered judgment finding as a fact and decreeing (1) "that all streets and avenues, or portions thereof, contained in the *locus in quo* are owned in fee simple by the plaintiffs" and they can convey a good title thereto clear of easements previously outstanding; and (2) that the plaintiffs own that portion of the *locus in quo* contained in the area shown on the maps as "Park" and "Park-Subject to Revision," but that this Park area "is subject to the right of the defendants to use same for park purposes," and therefore the plaintiffs cannot convey the fee simple title to any portion of the Park area free from an easement for park purposes.

From the judgment so entered, the plaintiffs appeal.

*Garland & Garland for plaintiffs, appellants.*
*L. B. Hollowell and Verne E. Shive for defendants, appellees.*

JOHNSON, J. The Fairmount Park subdivision as shown on the maps contains approximately 125 building lots. All these lots were sold and conveyed by D. B. Hanna and wife, original developers. Each of the deeds contains the following reservation:

"(12). The parties of the first part (D. B. Hanna and wife), their heirs and assigns, shall have the right to change, alter or close up any street or avenue shown upon said map or plat not adjacent to .the lot above described and not necessary to the full enjoyment by the party of the second part of the above described property *and shall retain the right and title to, and the control and disposition of all parks*, streets, avenues and planting spaces and areas within the boundaries of Fairmount Park, as shown on said map or plat, subject only to the rights of the party of the second part for the purposes of egress and ingress necessary to the full enjoyment of the above described property." (Italics added.)

The plaintiffs by *mesne* conveyances now own the interest reserved by Hanna and wife in the Park area shown on the maps. The plaintiffs contend the court below erred in finding and concluding that they may not convey the Park area, except as encumbered by easement for park purposes. The contention appears to be well taken.

True, the principle is well settled that when land is divided into lots according to a map thereof, showing streets, alleys, courts, and parks,

and lots are sold with reference to the map, *nothing else appearing,* the owner thereby dedicates the streets, alleys, courts, and parks to the use of the purchasers, and those claiming under them, and also under certain circumstances to the public. *Foster v. Atwater,* 226 N.C. 472, 38 S.E. 2d 316; *Insurance Co. v. Carolina Beach,* 216 N.C. 778, 7 S.E. 2d 13; *Irwin v. Charlotte,* 193 N.C. 109, 136 S.E. 368; *Green v. Miller,* 161 N.C. 24, 76 S.E. 505.

Here, however, something else appears, in the form of a reservation clause, which takes the *locus in quo* out of the operation of the foregoing rule. This reservation clause, appearing in the deeds by which all the lots in the subdivision were conveyed by the original developers of the property, in language free of ambiguity, clearly reserved to D. B. Hanna and wife the title and power to dispose of the Park area unburdened by easement for park purposes. The title and power so reserved is now vested in the plaintiffs by virtue of the *mesne* conveyances of record.

With decision thus resting on the reservation clause, it is not necessary to discuss the legal phases of these questions treated in the briefs: (1) whether the Park area was ever put to use as a park by the residents of the subdivision, or (2) whether there has been an effective withdrawal of the alleged dedication within the purview of G.S. 136-96. It is unnecessary for an appellate court, after having determined the merits of the case, to examine questions not affecting decision reached. *Painter v. Finance Co.,* 245 N.C. 576. Suffice it to say, the record discloses no sufficient evidence to justify a finding that the *locus in quo* or any part thereof was ever opened as a park. Besides, the court below made no specific finding or ruling on either of the foregoing questions.

Let the judgment below be modified so as to accord with the decision here reached, and as so modified it will be affirmed.

Modified and affirmed.