THEODORE H. SHEAR AND FRANCINE DURSO, TENANTS BY ENTIRETY; KEVIN AND ELIZABETH PIACENZA, TENANTS BY ENTIRETY; ALBERT AND CHRISTINE BENSHOFF, TENANTS BY ENTIRETY; AND TIMOTHY AND KAREN HUGHES, TENANTS BY ENTIRETY, PLAINTIFFS v. STEVENS BUILDING COMPANY, A N.C. CORPORATION, STEVENS BUILDING COMPANY, A N.C. GENERAL PARTNERSHIP, HELEN S. DENNING, INA S. CARTER, GENEVA S. MASSENGILL, DONALD A. STEVENS, OCTAVIA S. RIVENBARK, NORMA S. WILSON, KATHERINE S. WARD, WILLIAM E. STEVENS, JERRY H. STEVENS, AND HELEN G. STEVENS, DEFENDANTS

No. 9110SC666

(Filed 4 August 1992)

1. **Dedication § 11 (NCI4th)— community lake—easement— reference to plat—representations—surrounding property**

An easement to a lake and the surrounding property, located in a subdivision, was created where the developing corporation recorded a plat map with the register of deeds; the map sets out all of the subdivided lots for sale in the development and depicts streets, a playground, the lake, and the undeveloped property surrounding the lake; the deeds held by the original purchasers of homes in the subdivision reference this recorded plat map; the deeds held by plaintiffs reference this map; and, while selling and conveying in reference to the map alone creates an easement to the lake and surrounding property, oral representations and actions by defendants'

SHEAR v. STEVENS BUILDING CO.

[107 N.C. App. 154 (1992)]

predecessors concerning the lake and the surrounding undeveloped property necessarily include the undeveloped areas around the lake in the scope of the easement. The trial court erred in its conclusion that the representations and actions by defendants' predecessor created only an easement to the lake.

Am Jur 2d, Dedication §§ 22-24.

Validity and construction of regulations as to subdivision maps or plats. 11 ALR2d 524.

2. Easements § 42 (NCI4th)— subdivision lake—surrounding undeveloped property—water level lowered—development of surrounding property

The trial court erred in a declaratory judgment action concerning a subdivision lake and its surrounding property by allowing defendants to maintain the water level represented on defendants' 1988 plat map and develop the surrounding area where the easement was created for the benefit of the subdivision landowners simultaneously with the development in the late 1960s; the easement was created by selling and conveying lots with reference to the plat map, making oral representations about the availability and permanency of the lake and the undeveloped land surrounding the lake, and using the landowners' opportunity to use these areas as an inducement to sell lots; it is only logical to conclude that the easement was both to the lake and to the undeveloped land as it existed in the late 1950s; and defendants now seek to develop a portion of the undeveloped land created by draining the lake in 1988. Allowing defendants to maintain the lake at its lower 1988 level, which they created by draining the lake, and allowing a portion of the surrounding land to be developed, would be an encroachment on the scope of the easement created at the time of the original development, and defendants are obligated to restore the lake to its original level and leave the surrounding land undeveloped.

Am Jur 2d, Easements and Licenses § 72.

3. Easements § 42 (NCI4th)— subdivision lake—surrounding undeveloped property—cost of maintaining

The trial court erred by ordering that the cost of maintaining a subdivision lake should be equally divided between the subdivision landowners and the developer and its successors

where the Court of Appeals held that the landowners were the holders of an appurtenant easement to the lake and surrounding undeveloped land. Subdivision landowners have the sole responsibility of bearing the cost of maintaining their easement, no agreement or intent to the contrary appearing.

**Am Jur 2d, Easements and Licenses § 72.**

APPEAL by defendants and cross-appeal by plaintiffs from judgment entered 21 February 1991 in WAKE County Superior Court by *Judge Donald W. Stephens*. Heard in the Court of Appeals 11 May 1992.

This case involves a dispute over approximately thirteen acres of land containing what is known as White Oak Lake (hereinafter the lake) and surrounding undeveloped property in the residential subdivision of Cardinal Hills in Raleigh, North Carolina. Plaintiffs filed suit seeking a declaratory judgment on their claim that the landowners in Cardinal Hills have an appurtenant easement by implied dedication for the use and enjoyment of the lake and the surrounding undeveloped land. Plaintiffs also seek to enjoin defendants from draining the lake and developing the property around the lake. The evidence presented by plaintiffs at trial tends to establish the following facts and circumstances.

Cardinal Hills subdivision began with the purchase of a tract of land in the late 1950's and early 1960's by the Stevens Building Company (hereinafter the Stevens Corporation), a North Carolina corporation controlled by Allen T. Stevens and owned by him and his wife, Helen. The man-made lake was present on the tract of land at the time it was purchased by the Stevens Corporation. The title to the lake and the surrounding undeveloped land was kept by the Stevens Corporation until its dissolution in 1988. In 1989, the title was transferred to the Stevens Building Company, a North Carolina general partnership and successor in interest to the Stevens Corporation. This partnership is comprised of the named defendants who are the heirs of Allen T. Stevens.

In 1957, the Stevens Corporation filed a plat map with the Wake County Register of Deeds Office which depicted the subdivision plan for Cardinal Hills. This plat map depicts approximately 300 subdivided lots for development. The map also depicts streets, the lake and undeveloped areas surrounding the lake. This undeveloped area includes a playground. The plat map does not

indicate that the lake is reserved for future development or otherwise is not to be considered a part of the Cardinal Hills development. Plaintiffs presented evidence that original purchasers of homes in Cardinal Hills were shown this plat map and were allowed to choose the sites for their homes from the map.

Plaintiffs also introduced copies of deeds from the Stevens Corporation to original purchasers of homes in Cardinal Hills. The land description in each of these deeds references the plat map of Cardinal Hills. The deeds held by plaintiffs also reference this map in their respective land descriptions. The deeds and accompanying restrictive covenants held by the original purchasers and plaintiffs neither contain any reference to an easement to the lake nor a restriction on the use of the lake.

Plaintiffs presented the testimony of individuals who purchased homes in Cardinal Hills soon after the creation of the subdivision. Plaintiffs' witnesses told of incidents where they were informed that the lake was for the use and enjoyment of the residents of Cardinal Hills. The witnesses consistently testified these representations were made by Allen Stevens, members of the Stevens family or representatives of the Stevens Corporation. Plaintiffs' witnesses further testified that it was a common practice for residents of Cardinal Hills to use the lake. They also testified that the use and enjoyment of the lake was never discouraged and continued until the Stevens Building Company put up no trespassing signs around the lake in the late 1980's.

Two of plaintiffs' witnesses testified they sought to purchase sections of undeveloped land around the lake from the Stevens Corporation. They stated their reasons to purchase additional land were to extend their property line to the lake and ensure their continued access to the lake. These individuals testified that Allen Stevens constantly assured them that further purchases were neither possible nor necessary. One witness testified that Allen Stevens' response to his purchase request was "Well, we'd love to let you have more land [referring to the undeveloped land around the lake] but we can't because that goes to the community, to the development."

These witnesses also related that Allen Stevens encouraged them to maintain the undeveloped area of the lake which adjoined their property. James Liles testified that Allen Stevens told him to use the undeveloped land "just as if it's your own property

... just be sure that you keep it open for the community." Further, Brown Whitehouse testified he was told by Bill Stevens, son of Allen Stevens, that "My daddy [Allen Stevens] said that that lake is for the use and benefit of the people that live in Cardinal Hills and that land will not be sold and there will never be houses built on that side of Ravenwood Drive." Ravenwood Drive curves around the lake in Cardinal Hills. The original plat map shows that homes would be constructed only on the opposite side of this street from the lake. The lakeside portion of Ravenwood Drive as well as the remaining area around the lake was not subdivided on the map.

Plaintiffs also presented several newspaper advertisements which the Stevens Corporation and its exclusive real estate agency, Connell Realty, ran in the News and Observer in the late 1950's and early 1960's. Several of these ads boast of Cardinal Hills being one of Raleigh's newest subdivisions situated on rolling land overlooking "one of Wake County's most beautiful lakes." Other advertisements indicate that various homes for sale by the Stevens Corporation were "lakefront" homes or homes "with a view of the lake." At least two of plaintiffs' witnesses testified that the lake was the only reason and/or the most important reason they purchased a home in Cardinal Hills.

Defendants' evidence presented at trial tends to mirror the historical facts concerning the development of Cardinal Hills. Defendants' evidence tends to establish that Allen Stevens intended to maintain the lake for the enjoyment of him and his wife while they were alive. Defendants presented evidence that Allen Stevens erected a fence around the portion of the lake shoreline behind his house. This fence was erected to prevent anyone from disturbing his wife while she fished in the lake. Further, Ina Carter, daughter of Allen Stevens, testified that her father's only wish concerning the lake was that nothing be done to it while her mother was able to enjoy it. Defendants presented testimony that residents of Cardinal Hills routinely asked permission to use the lake and often paid Allen Stevens to fish in the lake.

Defendants presented the testimony of James Seay who lived in Cardinal Hills from 1957 to 1965. Seay stated that he heard Allen Stevens tell a group of builders in 1957 that he owned the lake and surrounding land and that neither were part of the Cardinal Hills development. Defendants' witness Patricia Johnson

testified that she bought a home in Cardinal Hills in 1960. She stated that she was never informed of the lake and that no representations were made to her concerning the availability of the lake.

In 1988, defendants received notice that the earthen dam which created the lake was in disrepair. Stevens Building Company was informed by the Land Resources Division of the North Carolina Department of Natural Resources and Community Development that the dam would have to be repaired or eventually breached to allow the water to drain out of the lake. Stevens Building Company then wrote a letter to one of the present landowners in Cardinal Hills informing this individual of its intent to drain the lake. Thereafter, Stevens Building Company drained water off the lake to reduce it to its present level. Stevens Building Company filed a plat map in 1988 showing its intent to subdivide the undeveloped land surrounding the lake. This particular plat map shows approximately twenty-four (24) lots of land for homes to be built on existing undeveloped land as well as additional land derived from the draining of the lake. Thereafter, plaintiffs filed suit.

Defendants moved for an involuntary dismissal at the close of plaintiffs' evidence and again at the close of all the evidence. These motions were denied. The trial court entered judgment in favor of plaintiffs declaring that landowners in Cardinal Hills held an appurtenant easement to the lake. The trial court ordered that defendants were able to develop a portion of the land surrounding the lake and also ordered that other portions remain undeveloped in order to accommodate the appurtenant easement. The trial court further ordered that the lake level be maintained as it is represented on defendants' 1988 plat map, that the Cardinal Hills landowners be responsible for the cost of maintaining the easement and that all parties equally share the cost of maintaining the lake and dam. Defendants appeal and plaintiffs cross-appeal.

*Poyner & Spruill, by H. Glenn Dunn and Timothy P. Sullivan, for plaintiff-appellees and cross-appellants.*

*Smith, Debnam, Hibbert & Pahl, by John W. Narron and Vickie Winn Martin, for defendant-appellants and cross-appellees.*

WELLS, Judge.

Through their various assignments of error, plaintiffs and defendants argue that the trial court erred in declaring that Cardinal

Hills landowners have an appurtenant easement to the lake, that the parties equally share the cost of maintaining the lake and that defendants may develop a portion of the undeveloped property surrounding the lake. We hold that an appurtenant easement by implied dedication was created to the lake and surrounding undeveloped property for the benefit of Cardinal Hills landowners.

[1] Plaintiffs and defendants first assign error to the trial court's findings of fact and conclusions of law regarding the creation of an appurtenant easement to the lake. Plaintiffs contend the trial court erred in finding that representations and actions by defendants' predecessors only created an easement to the lake. Plaintiffs also assign error to the trial court's conclusion of law stating that an easement was created only to the lake. They contend the evidence shows the creation of an easement to the lake as well as the surrounding undeveloped property. Defendants, however, contend the trial court's findings and conclusions that an easement was created to the lake are not supported by the evidence.

It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. *Chemical Realty Corp. v. Home Fed'l Savings & Loan*, 84 N.C. App. 27, 351 S.E.2d 786 (1987). Findings of fact by the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings. *Hunt v. Hunt*, 85 N.C. App. 484, 355 S.E.2d 519 (1987). A trial court's conclusions of law, however, are reviewable *de novo*. *Wright v. Auto Sales, Inc.*, 72 N.C. App. 449, 325 S.E.2d 493 (1985).

In the present case, the trial court made the following findings of fact relative to the creation of an easement to the lake:

4. In 1956, a Cardinal Hills subdivision plat map was recorded by the Stevens Corporation in the Wake County Registry in Book of Maps 1956 at page 75. A revised plat map was recorded in Book of Maps 1957 at page, 47. Both maps depict at the same location within the subdivison a lake identified as "White Oak Lake" which is surrounded by an unsubdivided open area. The maps also depict another open area labeled "playground" adjacent to the Lake and surrounding undeveloped area. All deeds to lots in Cardinal Hills in evidence, including Plaintiffs'

deeds, refer to the revised plat map recorded in the Wake County Registry Book of Maps 1957 at [p]age 47.

. . .

6. Newspaper advertisements in the summer of 1956 by Connell Realty and Mortgage Company, the exclusive sales agent for Cardinal Hills at the time, and by the Stevens Corporation at various times in 1960 and 1961, used the presence of White Oak Lake to induce the sale of new homes in Cardinal Hills.

7. At various times during this period, Allen T. Stevens, William C. Upchurch, an agent of the Stevens Corporation, and Pete Frazier, an agent of Connell Realty and Mortgage Company, made oral representations to purchasers of lots in Cardinal Hills, prior to closing, that White Oak Lake would remain for the use and enjoyment of residents of Cardinal Hills.

8. The developer, Stevens Corporation, and its agents engaged in an overall pattern of marketing which held out White Oak Lake as an amenity to be used and enjoyed by all Cardinal Hills landowners.

9. The aforesaid representations made by Allen Stevens and agents of the Stevens Corporation that White Oak Lake was to be for the use and enjoyment of landowners in Cardinal Hills helped induce the initial purchase of various lots in Cardinal Hills.

Our review of the record in this case reveals that there is competent evidence to support these findings of fact. We are therefore bound by these findings to the extent they are supported by the evidence presented at trial. However, finding of fact number 4 states that the plat map recorded and used by the Stevens Corporation clearly depicts the lake as well as the surrounding undeveloped and unsubdivided property. Further, this finding states that all deeds to lots sold in Cardinal Hills, including those held by plaintiffs, reference this plat map. We believe this finding alone is sufficient to establish an easement to the lake and the undeveloped property as depicted on the plat map.

An appurtenant easement is an easement created for the purpose of benefitting particular land. This easement attaches to, passes with and is an incident of ownership of the particular land. *Gibbs v. Wright,* 17 N.C. App. 495, 195 S.E.2d 40 (1973). It is well settled

in this jurisdiction that an easement may be created by dedication. This dedication may be either a formal or informal transfer and may be either implied or express. *Spaugh v. Charlotte*, 239 N.C. 149, 79 S.E.2d 748 (1953).

In *Realty Co. v. Hobbs*, 261 N.C. 414, 135 S.E.2d 30 (1964) our Supreme Court set out the applicable rules for the establishment of an appurtenant easement by the use of a plat map:

Where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into streets, lots, parks, and playgrounds, a purchaser of a lot or lots acquires the right to have the streets, parks and playgrounds kept open for his reasonable use, and this right is not subject to revocation except by agreement. *Steadman v. Pinetops*, 251 N.C. 509, 112 S.E.2d 102; *Conrad v. Land Company*, 126 N.C. 776, 36 S.E. 282. It is said that such streets and parks are *dedicated* to the use of lot owners in the development. In a strict sense it is not a dedication, for a dedication must be made to the public and not to a part of the public. *Jackson v. Gastonia*, 246 N.C. 404, 98 S.E.2d 444. It is a right in the nature of an easement appurtenant. Whether it be called an easement or a dedication, the right of the lot owners to the use of the streets, parks and playgrounds may not be extinguished, altered or diminished except by agreement or estoppel. *Irwin v. Charlotte*, 193 N.C. 109, 136 S.E. 368; *Todd v. White*, 246 N.C. 59, 97 S.E.2d 439. This is true because the existence of the right was an inducement to and a part of the consideration for the purchase of the lots. *Hughes v. Clark*, 134 N.C. 457, 47 S.E. 462; *Conrad v. Land Co., supra*. Thus, a street, park or playground may not be reduced in size or put to any use which conflicts with the purpose for which it was dedicated. *Insurance Co. v. Carolina Beach*, 216 N.C. 778, 7 S.E.2d 13; *Conrad v. Land Co., supra.*

*See also Hinson v. Smith*, 89 N.C. App. 127, 365 S.E.2d 166, *disc. review denied*, 323 N.C. 365, 373 S.E.2d 545 (1988).

The record reveals that the Stevens Corporation recorded a plat map with the Wake County Register of Deeds Office in the mid-1950's. This map sets out all of the subdivided lots for sale in the Cardinal Hills development. The map also depicts streets, a playground, the lake and the undeveloped property surrounding the lake. The record further reveals that the deeds held by original

purchasers of homes in Cardinal Hills reference this recorded plat map. Further, the deeds held by plaintiffs reference this map.

The contents of this map, and the Stevens Corporation's selling and conveying in reference to this map, alone creates an easement to the lake and the surrounding property. We note further, however, that oral representations and actions by defendants' predecessors concerning the lake and the surrounding undeveloped property necessarily include the undeveloped areas around the lake in the scope of the easement. These representations and actions, along with the use of the plat map and its depiction of the lake and property, decidedly show an intent to create an easement to the lake and surrounding undeveloped property.

Our Supreme Court has stated that an "implied dedication is also one arising by operation of law from the acts of the owner. . . . [T]here can be no dedication unless there is present the intent to appropriate the land to public use. . . . The intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent." *Spaugh, supra*. The Court also stated in *Nicholas v. Furniture Co.*, 248 N.C. 462, 103 S.E.2d 837 (1958) that "the owner's intention to dedicate some particularly described land . . . may be manifested by his affirmative acts whereby the public use is invited and his subsequent acquiescence in such use, by his express assent to, or deliberate allowance of, the use, or merely by his acquiescence therein . . . ."

In the present case, defendants' predecessors further manifested their intent to dedicate the lake and surrounding undeveloped property by oral representations made before, during and after the sale of homes in Cardinal Hills. Plaintiffs presented evidence through the testimony of original purchasers of homes in Cardinal Hills that Allen Stevens encouraged landowners to care for the undeveloped area around the lake "just like it was their land" but only "just as long as it [the undeveloped land] was kept open for the community." Allen Stevens also refused to sell additional land to purchasers who wished to extend their property line to the lake. Stevens maintained that additional purchases would be neither possible nor necessary stating "Well, we'd love to let you have more land, but we can't because that land goes to the community, to the development."

Further, Bill Stevens, one of Allen Stevens' sons, represented that it was his father's intent that the lake and the surrounding undeveloped property remain in its natural state. Plaintiffs' witness, Brown Whitehouse, testified that Bill Stevens told him "My daddy [Allen Stevens] said that that lake is for the use and benefit of the people that live in Cardinal Hills and that land will not be sold . . . ." Plaintiffs also presented evidence that the lake and surrounding undeveloped land were often used by residents of Cardinal Hills for recreational purposes and that the use of the lake and land was never discouraged by the Stevens Corporation. In fact, the evidence shows that the use of the lake and land were often encouraged by Allen Stevens.

Finally, plaintiffs presented evidence that the Stevens Corporation and its exclusive real estate agent, Connell Realty, ran newspaper ads which stated that Cardinal Hills featured homesites on "one of Wake County's most beautiful lakes." The newspaper ads also indicated several homes had a "view of the lake" and that others were "lakefront" homes. This is additional evidence that Allen Stevens and the Stevens Corporation used the lake as an attraction to homebuyers.

Further, this practice along with the oral representations about the lake and undeveloped land, the encouragement of and acquiescence in the use of the lake and land, and, lastly, the depiction of the lake and undeveloped land on the plat map manifests the Stevens Corporation's intent to dedicate these areas to the Cardinal Hills landowners. In light of its findings of fact, the trial court erred in its conclusion that the representations and actions by defendants' predecessor created only an easement to the lake.

[2]  Plaintiffs assign error to the trial court's declaration that defendants maintain the water level of the lake as represented on defendants' 1988 plat map and that defendants may develop a portion of the land surrounding the lake. They contend these allowances by the trial court infringe on the easement created in the lake and undeveloped land. We agree.

The easement for the benefit of the Cardinal Hills landowners was created simultaneously with the Cardinal Hills development in the late 1950's. The easement was created by (1) selling and conveying lots with reference to the plat map, (2) making oral representations about the availability and permanency of the lake and the undeveloped land surrounding the lake and (3) using the

landowners' opportunity to use these areas as an inducement to sell lots. Therefore, it is only logical to conclude that the easement was both to the lake and to the undeveloped land as it existed in the late 1950's.

A portion of the undeveloped land, which defendants now seek to develop, was created by the draining of the lake in 1988. Allowing defendants to maintain the lake at its lower 1988 level, a level which defendants created by draining the lake, and allowing a portion of the surrounding land to be developed, would be an encroachment on the scope of the easement which was created at the time of the original development. Therefore, defendants are obligated to restore the lake to its original level and to leave the surrounding land shown on the 1957 plat map as undeveloped in its original condition.

[3] Plaintiffs and defendants also assign error to the portion of the trial court's order which declares that the cost of maintaining the lake should be equally divided between the parties. Both parties contend that this declaration is neither supported by findings of fact nor conclusions of law. We agree. It is well established in this jurisdiction that ordinarily the owner of an easement or the person for whose benefit the easement exists is the party to be charged with its maintenance. See Green v. Duke Power Co., 305 N.C. 603, 290 S.E.2d 593 (1982); and Richardson v. Jennings, 184 N.C. 559, 114 S.E. 821 (1922). No agreement or intent to the contrary appearing in this case, plaintiffs and the Cardinal Hills landowners, as holders of the appurtenant easement to the lake and surrounding undeveloped land, have the sole responsibility of bearing the cost of maintaining their easement. Therefore, the cost of maintaining the lake and the surrounding undeveloped land should be paid by the Cardinal Hills landowners.

For the reasons stated, the judgment of the trial court is vacated and this case is remanded to the trial court for entry of an appropriate judgment not inconsistent with this opinion.

Vacated and remanded.

Judges ARNOLD and EAGLES concur.