IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-568

Filed: 21 March 2017

Burke County, No. 15 CVS 180

HILDEBRAN HERITAGE & DEVELOPMENT ASSOCIATION, INC., and CITIZENS UNITED TO PRESERVE THE OLD HILDEBRAN SCHOOL, Plaintiffs

v.

THE TOWN OF HILDEBRAN and FOOTHILLS RECYCLING & DEMOLITION, LLC, Defendants

Appeal by plaintiffs from judgment entered 11 August 2015 and order entered 14 September 2015 by Judge Joseph N. Crosswhite, in Burke County Superior Court. Heard in the Court of Appeals 4 October 2016.

> *Sigmon, Clark, Mackie, Hanvey & Ferrell, P.A., by Jason White and Amber R. Mueggenburg, for plaintiff-appellants.*
>
> *Byrd, Byrd, McMahon, & Denton, P.A., by Lawrence D. McMahon, Jr. and G. Redmond Dill, Jr., for defendant-appellee Town of Hildebran.*
>
> *The Starnes Law Firm, by James B. Hogan, for defendant-appellee Foothills Recycling & Demolition, LLC.*
>
> *Engstrom Law, PLLC, by Elliot Engstrom, for amicus curiae Engstrom Law, PLLC.*

CALABRIA, Judge.

Where the meeting of the town council was held openly and in view of the public, the trial court did not err in concluding that it did not violate the Open Meetings Law. Where the only evidence of unreasonable limitation of opportunity for access to the meeting was the fact that the venue could not accommodate all

present, the trial court did not err in concluding that the town council did not violate the Open Meetings Law.

Where the trial court declared the contract for demolition of a building null and void, and the building was subsequently destroyed in a fire, the issue of whether the trial court erred in granting a partial directed verdict is moot. Where plaintiffs failed to demonstrate an abuse of discretion, the trial court did not abuse its discretion in declining to award attorney's fees. We affirm in part, and dismiss in part.

## I. Factual and Procedural Background

The Old Hildebran School ("Old School") was built in 1917, and has since been viewed as a town landmark. Two additions to the Old School were completed in 1924 and 1937, and in the 1950s a breezeway was added to connect the older portions of the building to the newer high school structures. The Old School functioned as both a Junior High and High School from its opening in 1917 until 1987, when new school buildings were built in town. The Town of Hildebran ("Town") acquired the Old School from the Burke County Board of Education in 1988.

The Old School was first discussed at a 22 September 2014 special meeting of the Hildebran Town Council ("Town Council"). At this meeting, Council Member Lee Lowman ("Lowman") brought up the physical state of the school, expressing his belief that the Old School was beyond repair and was both a safety and fire hazard. Council

Member Jamie Hollowell ("Hollowell") then requested that "hard copy bids" be solicited for costs of both demolition and repair of the school, in order to make an informed decision. Virginia Cooke ("Cooke"), Council Member and town mayor, stated that she had solicited a quote for costs to demolish the school.

The Town Council next discussed the Old School at its 27 October 2014 regularly scheduled meeting. There were two discussions concerning the Old School at the 27 October 2014 meeting. First, the Town Council considered a resolution that would exempt it from following the formal bidding process for projects costing less than ninety thousand dollars, which failed. Second, the Town Council entered into a closed session to "discuss matters relating to the location or expansion of industries or other businesses in the area served by the public body, including agreement on a tentative list of economic development incentives that may be offered by the public body in negotiations" citing N.C. Gen. Stat. § 143-318.11(a)(4). Later, at trial, the evidence showed that the Old School's future was discussed during the closed session rather than a discussion pertinent to "the location or expansion of industries or other businesses[.]"

The Town Council next discussed the Old School at the regularly scheduled meeting on 24 November 2014, where a presentation was given regarding the possibility of historic rehabilitation. The Old School was otherwise not discussed any further at the 24 November 2014 meeting.

Public interest in the fate of the Old School began to grow in late November and early December of 2014. The trial court found that "at least one Council member and the Mayor knew that public interest in the fate of the old school building was very high[.]" At the Town Council's December 2014 regular meeting, Cooke announced that there would be a public forum to allow citizens to discuss options for the Old School, and the forum was scheduled for 8 January 2015, as a special meeting.

At the 8 January 2015 special meeting, Cooke announced which portions of the school would be "affected" by demolition. Twenty-one members of the public spoke, each addressing opinions as to the fate of the school, with nineteen of the twenty-one speakers in favor of saving the Old School. The Town Council held another special meeting on 23 January 2015, at which the school was not discussed.

The Town Council's next meeting was its regularly scheduled meeting on 26 January 2015. The Town Council posted the agenda for this meeting, as was its routine, on its website. The published agenda for the 26 January 2015 Town Council meeting showed that the Town Council would discuss the Old School, but there was no indication that the Town Council would vote upon the Old School's fate at the meeting. Even though there was no vote scheduled on the agenda, the meeting room was full for the 26 January 2015 meeting. Around twenty to twenty-five members of the public were permitted to enter the meeting room to voice their opinions, however they were not permitted to remain in the room once having done so. At least one

member of the public and one Council Member requested the meeting to be relocated to the Town auditorium, a standalone structure adjacent to the Town Hall complex. The relocation request was denied. The reason for denying the request was that a change in location would have required the Town Council to give at least forty-eight hours public notice, pursuant to N.C. Gen. Stat. § 143-318.12(a).

The evening before the 26 January 2015 meeting, Lowman communicated with Cooke and all members of the Council, except for Councilman Wendell Hildebran ("Hildebran"). The purpose of the conversations between Lowman and the others was to (1) discuss his intention to amend the agenda and call for a vote as to the fate of the school and (2) determine whether the Council Members would support his effort to amend the agenda and call for a vote. Lowman did not contact Hildebran because he knew he would not support Lowman's amendment to the agenda, and Lowman believed that Hildebran would inform the public of the plan to amend the agenda.

Based on Lowman's conversations with Cooke and other Town Council members, Lowman made a motion to amend the agenda at the 26 January 2015 meeting from "Original School Building Discussion" to "Original School Building Discussion/Vote[.]" The trial court found that "[p]rior to the meeting held on January 26, 2015, the public did not have knowledge that the agenda would be amended or the nature of the amendment to the agenda." Hildebran requested that the vote be tabled until the Town's 23 March 2015 meeting.

The motion to amend the agenda passed, and Hildebran was the only member to oppose the amendment. The agenda was further amended to add "Old School Building Demolition Quotes under Old Business" because Cooke had informed Lowman, prior to the 26 January 2015 meeting, that she had received demolition quotes. The Town voted to demolish the Old School and to award the demolition contract to Foothills Recycling & Demolition, LLC ("Foothills") on 26 January 2015.

On 24 February 2015, Hildebran Heritage & Development Association, Inc. ("HHDA"), and Citizens United to Preserve the Old Hildebran School ("Citizens United") (collectively, "plaintiffs"), filed a complaint against the Town and Foothills (collectively, "defendants"), alleging breach of contract, failure to comply with N.C. Gen. Stat. § 143-129 *et seq.* (the procedure for government bodies taking bids on public contracts), and failure to comply with N.C. Gen. Stat. § 143-318.9 *et seq.* (the "Open Meetings Law"). In addition, plaintiffs sought a temporary restraining order and a preliminary injunction to prevent the demolition of the Old School. On 20 March 2015, Foothills filed its answer and motions to dismiss, alleging failure to state a claim upon which relief can be granted, lack of capacity by Citizens United to file a lawsuit, and plaintiffs' lack of standing. On 24 April 2015, the Town filed its answer.

A bench trial was held before the Superior Court of Burke County. At trial, at the conclusion of plaintiffs' evidence, defendants moved for a partial directed verdict on the issue of the validity of the contract between the Town and Foothills. On 3

September 2015, the trial court entered an order on this motion, granting it in favor of defendants, and holding that "the evidence . . . is insufficient as a matter of law to establish that the contract between the Defendants to demolish the School Building is invalid[.]"

On 11 August 2015, the trial court entered its judgment on plaintiffs' complaint. It first noted that plaintiffs had alleged four different violations of the Open Meetings Law: (1) that the Town Council had discussed remodeling or destroying the Old School during the 27 October 2014 closed session meeting; (2) that the Town Council had failed to provide reasonable access to the 26 January 2015 meeting; (3) that Lowman had engaged in one-on-one discussions outside of the open sessions; and (4) that the Town Council had voted to amend its agenda at the 26 January 2015 meeting. With respect to the first allegation, the trial court acknowledged that the discussion during the closed session meeting on 27 October 2014 constituted a violation of the Open Meetings Law. Nonetheless, the trial court concluded that, notwithstanding this violation, "the vote of the Defendant's Town Council to demolish the old school building and the award of the demolition contract to the Defendant Foothills should not be declared null and void."

With respect to plaintiffs' remaining allegations, the trial court concluded that the measures taken to make the 26 January 2015 meeting accessible to the public were "reasonable under all the circumstances existing at that time and substantially

complied with the Open Meetings Law[,]" that the evidence with respect to the one-on-one discussions and vote to amend was "insufficient as a matter of law to establish that any of these other acts were in violation of the Open Meetings Law[,]" and that therefore defendants were entitled to a directed verdict with respect to these allegations.

The trial court then considered whether to award attorney's fees. The court concluded that, as both parties had succeeded on a substantial issue in the case, both were "prevailing parties" under statute. In its discretion, the court declined to award attorney's fees to either side.

From the trial court's order granting a partial directed verdict, and from the trial court's judgment, plaintiffs appeal.

## II. Directed Verdict

In their third argument, which we choose to address first, plaintiffs contend that the trial court erred in entering a directed verdict in favor of defendants as to the claim that the demolition contract was null and void. Due to newly revealed information, however, we hold that this issue is moot.

At oral arguments before this Court, it was revealed by the parties that the Old School, during the pendency of the appeal, had caught fire and burned down. The fact that the parties did not consider this information to be pertinent to be brought to

the attention of this Court is itself troubling. This information would not have been brought to the attention of the Court, but for a fortuitous question from the Court.

> Where parties contract with reference to specific property and the obligations assumed clearly contemplate its continued existence, if the property is accidentally lost or destroyed by fire or otherwise, rendering performance impossible, the parties are relieved from further obligations concerning it. . . . Before a party can avail himself of such a position, he is required to show that the property was destroyed, and without fault on his part.

*Sechrest v. Forest Furniture Co.*, 264 N.C. 216, 217, 141 S.E.2d 292, 294 (1965) (citation and quotations omitted). In the instant case, it is clear that the Old School was completely destroyed by fire, through no fault of either party. Likewise, the contract for the demolition of the Old School clearly contemplated its continued existence, at least until the contract was completed.

Had this information been available at trial, it would clearly have supported the trial court's determination that the contract was null and void. Performance of the contract was rendered impossible by the destruction of the Old School by fire. However, the record contains no evidence as to when the Old School was destroyed by fire; moreover, the trial court's order on the motion for a directed verdict seems to imply that, as of the entry of that order, the trial court was unaware of the Old School's destruction, had the fire even occurred at that time. As such, this new information has no bearing on the trial court's order.

It does, however, have bearing on the ultimate disposition of this issue. The destruction of the Old School renders performance under the contract impossible. Certainly, even if the contract was not null and void when the trial court entered its order, the contract is null and void now. Even were we to agree with plaintiffs' contentions and remand this issue, the outcome would be the same; the trial court would grant a directed verdict, holding the contract to be null and void as a result of the destruction of the Old School. We therefore hold that this matter is moot, and dismiss this argument accordingly.

### III. The Open Meetings Law

In their first and second arguments, plaintiffs contend that the Town violated the Open Meetings Law, both by purposefully conducting sub-quorum meetings, and by failing to provide reasonable public access. We disagree.

### A. Standard of Review

"Issues of statutory construction are questions of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010). "Whether a violation of the Open Meetings Law occurred is a question of law. We therefore apply *de novo* review to this portion of the decision of the trial court." *Knight v. Higgs*, 189 N.C. App. 696, 700, 659 S.E.2d 742, 746 (2008).

### B. One-on-One Meetings

First, plaintiffs contend that the Town violated the Open Meetings Law by permitting Lowman to conduct one-on-one meetings.

> It is the public policy of our State that "hearings, deliberations, and actions of [public] bodies be conducted openly." N.C. Gen. Stat. § 143-318.9 (2005). Accordingly, as a general rule, "each official meeting of a public body shall be open to the public, and any person is entitled to attend such a meeting." N.C. Gen. Stat. § 143-318.10(a) (2005).

*Gannett Pac. Corp. v. City of Asheville*, 178 N.C. App. 711, 714, 632 S.E.2d 586, 588 (2006); *see also* N.C. Gen. Stat. §§ 143-318.9 and -318.10(a) (2015). Plaintiffs contend that the Town, a public body, violated this public policy, in that Lowman contacted members of the Town Council individually and in private, rather than openly.

Plaintiffs attempt to analogize these facts with those in *News & Observer Publishing Co. v. Interim Bd. of Educ.*, 29 N.C. App. 37, 223 S.E.2d 580 (1976). In that case, the defendant created a special "committee of the whole" in order to enact business without invoking the Open Meetings Law. This Court acknowledged that certain grounds might exist to form a closed session committee of the whole, such as theft or embezzlement, but held that "we do not think a board can evade the provisions of statutes requiring its meetings to be open to the public merely by resolving itself into a committee of the whole." *Id.* at 49, 223 S.E.2d at 588.

We hold, however, that plaintiffs' analogy is inapplicable. In *News & Observer*, the defendant board met to conduct votes in closed session, in violation of the Open Meetings Law. Plaintiffs do not allege, however, that Lowman conducted any

- 11 -

business during these one-on-one meetings. Rather, Lowman discussed with other members of the Town Council his plan to present a motion to amend at the meeting proper. Even assuming *arguendo* that Lowman's conduct was designed to avoid the protections of the Open Meetings Law, the vote itself took place at the 26 January 2015 meeting, at which the public was present, minutes were taken, and the votes of the Town Council were recorded. Unlike *News & Observer*, in which a closed session was held in violation of the Open Meetings Law, this meeting was held in view of the public, with members of the public able to speak, and with records taken of the proceedings. As such, we hold that the trial court did not err in concluding that the Town did not violate the Open Meetings Law.

### C. Reasonable Public Access

Plaintiffs further contend that the Town failed to provide reasonable public access to the 26 January 2015 meeting.

Pursuant to the Open Meetings Law, the court must consider a defendant's actions "according to the standard of reasonableness of opportunity for public access to the meetings." *Garlock v. Wake Cty. Bd. of Educ.*, 211 N.C. App. 200, 201, 712 S.E.2d 158, 162 (2011). Plaintiffs contend that the venue used for the meeting was inadequate to address the public's interest, that between twenty and twenty-five people were forced to stand outside the meeting room, and that no equipment was available to permit these excess attendees to observe or hear what transpired during

the meeting. Plaintiffs contend that whether the opportunity for public access was reasonable is a question of fact for the jury, and that the trial court erred in ruling on it as a matter of law.

However, "[w]hether a violation of the Open Meetings Law occurred is a question of law." *Knight*, 189 N.C. App. at 700, 659 S.E.2d at 746. As such, it was appropriate for the trial court to determine this issue on a motion for directed verdict. The trial court's order set out numerous facts, which are supported by the evidence, in support of its determination as a matter of law that opportunity for public access was reasonable, and that no violation of the Open Meetings Law resulted. We agree. We decline to find that a lack of overflow seating or external speakers, absent more, constitutes an unreasonable failure of access. We therefore hold that the trial court did not err in holding, as a matter of law, that there was reasonable opportunity for access to the meeting under the Open Meetings Law.

## IV. Attorney's Fees

In their fourth argument, plaintiffs contend that the trial court erred in declining to award attorney's fees based upon defendants' purported violation of the Open Meetings Law. We disagree.

## A. Standard of Review

"When an action is brought pursuant to [the Open Meetings Law], the court may make written findings specifying the prevailing party or parties, and may award

the prevailing party or parties a reasonable attorney's fee, to be taxed against the losing party or parties as part of the costs." N.C. Gen. Stat. § 143-318.16B (2015). "Such an award is discretionary under the statute." *Knight*, 189 N.C. App. at 704, 659 S.E.2d at 748.

## B. Analysis

In its judgment, the trial court found that both plaintiffs and the Town succeeded on significant issues in the litigation, and therefore found that "the Plaintiffs and the Defendant [Town of] Hildebran are both prevailing parties." In an exercise of its discretion, the trial court declined to award attorney's fees, and ordered each party to bear its own costs. On appeal, plaintiffs contend this ruling was an abuse of discretion.

Plaintiffs' argument is premised on the fact that "the directed verdict granted in favor of the Town was erroneous." However, we have already held that the trial court did not err in granting a directed verdict in favor of defendants. Plaintiffs present no additional arguments to support their contention that the trial court abused its discretion in declining to award attorney's fees. We hold, therefore, that the trial court did not abuse its discretion.

## V. Conclusion

The trial court did not err in concluding as a matter of law that the Town substantially complied with the Open Meetings Law, including providing reasonable

access to the 26 January 2015 meeting. The trial court did not abuse its discretion in declining to award attorney's fees. We dismiss plaintiffs' arguments with respect to the trial court's order for a partial directed verdict.

AFFIRMED IN PART, DISMISSED IN PART.

Judge TYSON concurs.

Judge BRYANT concurs in part and dissents in part.

No. COA16-568 – *Hildebran Heritage & Dev. Ass'n, Inc. v. The Town of Hildebran*


BRYANT, Judge, concurring in part and dissenting in part.

Because I believe the trial court erred in directing a verdict when it concluded, contrary to the facts, that one-on-one meetings conducted by Councilman Lowman did not violate the Open Meetings Law, I respectfully dissent from that portion of the majority opinion.

> In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, *giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom* and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor.

*Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989) (emphasis added) (citation omitted).

> Allegations that a party violated the Open Meetings Law are considered by the Superior Court in its role as a trier of fact.

> "It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992). If supported by competent evidence, the trial court's findings of fact are conclusive on appeal. *Finch v. Wachovia Bank & Tr. Co.*, 156 N.C. App. 343, 347, 577 S.E.2d 306, 308–09 (2003). "Conclusions of law drawn by the

> trial court from its findings of fact are reviewable *de novo* on appeal." *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 26, 265 S.E.2d 123, 127 (1980).
>
> *Gannett Pacific Corp. v. City of Asheville*, 178 N.C. App. 711, 713, 632 S.E.2d 586, 588 (2006). Whether a violation of the Open Meetings Law occurred is a question of law. We therefore apply *de novo* review to this portion of the decision of the trial court.

*Knight v. Higgs*, 189 N.C. App. 696, 699–700, 659 S.E.2d 742, 745–46 (2008).

North Carolina's public policy requires that hearings, deliberations, and actions of public bodies be conducted openly. N.C. Gen. Stat. § 143-318.9 (2015). As a general rule, "each official meeting of a public body shall be open to the public, and any person is entitled to attend such a meeting." N.C. Gen. Stat. § 143-318.10(a) (2015). A "public body" is defined as

> any elected or appointed authority, board, commission, committee, council, or other body of [North Carolina], . . . or other political subdivisions or public corporations in [North Carolina] that (i) is composed of two or more members and (ii) exercises or is authorized to exercise a legislative policy-making, quasi-judicial, administrative, or advisory function.

*Id.* § 143-318.10(b).

An "official meeting" is defined as "a meeting, assembly, or gathering together at any time or place or the simultaneous communication by conference telephone or other electronic means of a majority of the members of a public body . . . ." *Id.* § 143-318.10(d). "By the plain language of the statute, in order to be an official meeting, a

majority of the members of the public body must be present." *Gannett Pac. Corp.*, 178 N.C. App. at 715, 632 S.E.2d at 589. "However, a social meeting or other informal assembly or gathering together of the members of a public body does not constitute an official meeting unless it is called or held *to evade the spirit and purposes of this Article*." N.C.G.S. § 143-318.10(d) (emphasis added).

At trial, Councilman Lowman was called as a witness by plaintiff and testified at length about the propriety of the "one-on-one" discussions with council members and the mayor:

> Q. Have you had any occasions at any -- at any point in time . . . to discuss a matter pertaining to the demolition of the old school building one-on-one with, say, the mayor?
>
> A. I have talked one-on-one with the mayor and one-on-one with the council.
>
> Q. And are there also examples where other members of the council have talked one-on-one with the mayor about the fate of the old school building?
>
> A. Yes.
>
> Q. And those would be one-on-one discussions that were had individually, rather than calling a meeting to talk about it collectively?
>
> A. Correct. A meeting is considered three, three of us together, three council or two council and the mayor -- or three of us and the mayor.
>
> Q. And you're aware, then, that you can have those one-on-one discussions --

A. Uh-huh.

Q. -- and avoid calling a meeting.

A. Correct.

Q. And if the mayor's having discussions or if you're having discussion one-on-one with a council member about the fate of the old building, you can do that individually and avoid having to call a meeting and have the public sit in and listen, correct?

A. That is correct.

Q. And that's happened, has it not, with regard to the demolition of the old school building?

A. It has, both, demolition and rehab.

Q. But, but, in particular, it has in terms of demolition, correct?

A. That is correct.

Q. And, again, no member of the public's going to be privy to those one-on-one discussions that you're having regarding demolition of the building, for example, with the mayor, correct?

A. That is correct.

Q. No member of the public's going to be privy to the information you're discussing . . . one-on-one with members of the council with the mayor, correct?

A. That is correct.

Q. Have you had meetings where you met with two of the other council members?

4

A.  No.

Q.  The reason you haven't done that is because that would constitute a meeting, correct?

A.  That is correct.

Q.  And you don't want to do that, correct?

A.  That is correct.

. . . .

Q.  And you didn't want to have it be a matter of public record, that you planned on amending the agenda, did you?

A.  I didn't make that call until the week of the meeting.

Q.  But you certainly had enough time to discuss that one-on-one with those council members.

A.  I asked them if they were ready to vote, yes.

Q.  And that was outside of the public meeting.

A.  Correct.

Q.  And that was pertaining specifically to the demolition of the old school building.

A.  Demolition versus the rehab. I was not swaying their votes. It was just were they ready.

Q.  And you had that discussion.

A.  Yes.

Q.  Outside of a public meeting.

A.  Yes.

Q. And you knew that there would be no record of that that would be available to the public.

A. That is correct.

. . . .

Q. And, ultimately, the council decided and voted to allow you to amend the agenda, correct?

A. That is correct.

Q. And did each of those members that you had those one-on-one conversations with -- did they vote in support of amending the agenda?

A. As far as I know, yes. Except for one.

Q. Did you have a one-on-one conversation with Mr. Hildebrand [sic] beforehand?

A. No, I knew where he stood.

Q. So the reason you didn't have a conversation with him is because you knew he'd be opposed to amending the agenda.

A. There was -- He was opposed and I was for. It was plain as day, yes.

Q. Okay. So you avoided having that conversation with him based upon that.

A. I don't speak to Mr. Hildebrand [sic].

Q. Well, whether you do or not, the reason you didn't have the discussion with him, as you did with the others that voted for your position to amend the agenda, was because you knew he wouldn't be in favor of it, correct?

Q. That is correct.

Q. And he would let the public know about it, correct?

A. Correct.

The trial court made the following relevant findings of fact:

14. Prior to the meeting on January 26, 2015, Councilman Lee Lowman contacted certain other Council members one-on-one to inquire about amendment of the agenda for the January 26, 2015 meeting to include a vote to demolish the old school building.

15. Councilman Lee Lowman contacted certain other Council members one-on-one *to avoid holding an official meeting* ~~and to prevent such communications from being open to the public~~.

16. Councilman Lee Lowman ~~intentionally~~ did not contact the one Council member that he knew held an adverse position to his own.

17. Councilman Lee Lowman indicated that it was typical for Council members to have one-on-one communications to conduct the business of the Town of Hildebran.

(Strike-outs in original) (emphasis added).

The trial court's findings of fact, particularly that Councilman Lowman (1) contacted other council members one-on-one specifically "*to avoid holding an official meeting*," and (2) did not contact Councilman Hildebran as he knew he held an adverse position, are clearly based on evidence in the record that the other council members were called "to ensure that they had the vote to amend the agenda, which would allow them to vote on the school building demolition without any prior notice

7

to the public." Councilman Lowman admitted that he didn't contact Councilman Hildebran because he knew Hildebran held an adverse position, and if Lowman asked Hildebran about voting to amend the agenda, he would alert the public. The only reasonable inference to be drawn from these facts is that Councilman Lowman's action of contacting other council members individually was to evade the purpose of the Open Meetings Law.

Thus, because the findings by the trial court support a conclusion that Councilman Lowman's actions were purposeful and undertaken in order to evade the purpose and spirit of the Open Meetings Law and the council's obligation to conduct meetings in public, I submit the trial court erred in concluding the above-described actions did not amount to a violation. Therefore, I respectfully dissent.