MULTIMEDIA PUBLISHING OF NORTH CAROLINA, INC., D/B/A ASHEVILLE CITIZEN TIMES PUBLISHING COMPANY, A NORTH CAROLINA CORPORATION, PLAINTIFF V. HENDERSON COUNTY AND HENDERSON COUNTY BOARD OF COMMISSIONERS, DEFENDANTS

No. COA00-1106

(Filed 7 August 2001)

**1. Open Meetings— government body—attorney-client exception—closed session minutes**

The trial court erred by concluding that defendant Henderson County Board of Commissioners violated the Open Meetings Law and that their closed meeting was not within the attorney-client privilege under N.C.G.S. § 143-318.11, because: (1) the record reflects no discussion of general policy matters or the propriety of the moratorium at issue; and (2) the Board's minutes of the closed session satisfy both the "full and accurate minutes" and the "general account" requirements of N.C.G.S. § 143-318.10(e).

**2. Public Records— government body—closed session minutes**

The trial court did not err by concluding that defendant Henderson County Board of Commissioners violated the Public Records Act when it reconvened the public session of its meeting and explained that the county attorney had in the closed session suggested amendments to the draft of the moratorium previously presented, because the Board had a duty to disclose the minutes of the closed session to the public based on the fact that it would no longer frustrate the purpose of the closed session.

Appeal by defendants from an order entered 30 June 2000 by Judge Ronald K. Payne in Henderson County Superior Court. Heard in the Court of Appeals 30 May 2001.

*Kelly & Rowe, P.A., by James Gary Rowe, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Tyrus V. Dahl, Jr. and Andrew C. Buckner, for defendant-appellants.*

*James B. Blackburn, III, for the North Carolina Association of County Commissioners, amicus curiae.*

HUNTER, Judge.

Defendant-appellant Henderson County Board of Commissioners (herein representing defendant-appellant Henderson County and collectively referred to as "the Board") appeals the trial court's order finding it had violated the Open Meetings Law and the Public Records Act and, awarding plaintiff-appellee Multimedia Publishing of North Carolina, Inc., d/b/a Asheville Citizen Times Publishing Company, a North Carolina Corporation, (herein "plaintiff") attorney's fees. We affirm in part and reverse in part.

On 12 November 1998, the Board convened a special public session to "consider[] the adoption of a moratorium on race tracks for a sixty to ninety day-time period, during which time a noise ordinance would be researched, drafted, and presented to the Board for its review and consideration." After discussing the proposed ordinance (discussion of which is reflected in the open-session minutes), the Board "met in closed session during a specially called meeting" "to consult with [its] Attorney prior to the decision" it made regarding placing a moratorium on the construction or operation of race tracks in Henderson County. The closed session was held for the purpose of seeking and obtaining confidential legal advice from the County's retained attorney as well as from the County Staff Attorney. The minutes accounting for the closed session stated:

ITEM DISCUSSED pursuant to NCGS § 143-318.11(a)(3)

CONSULT WITH ATTORNEY

Staff Attorney, Jennifer Jackson informed the Board that we have already been informed that action on a moratorium will be challenged. *She briefly explained the difference between a "Land Use Ordinance" and a "Police Power Ordinance."*

*There was discussion about the legality of making the term longer than 90 days.* It was decided that 90 days would be enough time to give staff time to complete the Noise Ordinance.

**MULTIMEDIA PUB'G OF N.C., INC. v. HENDERSON CTY.**

[145 N.C. App. 365 (2001)]

The County Attorney then suggested some wording changes to the Ordinance as follows:

under Moratorium paragraph it will now read "There is hereby imposed a moratorium on the construction or operation of race-tracks within the County of Henderson. <u>No permits may be issued by any County department under the control of the Board of Commissioners during the moratorium.</u> This moratorium shall continue in full force and effect for ninety (90) days expiring at midnight on February 9, 1999." (The underlined sentence was the added verbiage.) Also an additional paragraph was suggested entitled Enforcement which read "This Ordinance may be enforced by any legal and equitable remedies including but not limited to injunctive relief."

After conferring with the County Attorney, it was the consensus of the Board to amend the Moratorium Ordinance as recommended by the County Attorney.

(Redacted language italicized.)

Following the closed session the public hearing reconvened and one of the Board's attorneys announced that a couple of amendments were proposed to the draft of the moratorium language previously presented. (The Board had announced at the start that although it was a public meeting, "[w]e will have no public comments received at this meeting . . . . And discussion concerning zoning is inappropriate at this meeting and will not be permitted. The public will be given an opportunity to speak about the racetrack issue in a more general fashion at a subsequent meeting . . . ." Then, "[u]pon motion, the moratorium received a favorable vote by each of the four commissioners present."

Consequently, on 8 December 1998 plaintiff filed a complaint alleging the Board had violated the Open Meetings Law (N.C. Gen. Stat. § 143-318.10 *et seq.*) and the Public Records Act (N.C. Gen. Stat. § 132-1 *et seq.*), and seeking: declaratory and injunctive relief against the Board, a *writ of mandamas* requiring the Board to disclose the minutes of the closed session, and attorney's fees. Although it filed no answer, the Board submitted affidavits in defense of plaintiff's claims arguing that the closed session fell within the purview of its statutory right to attorney-client privilege and consequently, on 25 February 1999 the trial court concluded that the Board had not violated any laws. Thus, it denied plaintiff's claims for relief, *mandamus* and

attorney's fees. Plaintiff filed motions seeking a new trial and/or an amendment of the judgment which were also denied. On 18 March 1999, plaintiff appealed the trial court's rulings to this Court.

N.C. Gen. Stat. § 143-318.11(a)(3) (1999) reads:

It is the policy of this State that closed sessions shall be held only when required to permit a public body to act in the public interest as permitted in this section. A public body may hold a closed session and exclude the public only when a closed session is required:

. . .

(3) To consult with an attorney employed or retained by the public body in order to preserve the attorney-client privilege between the attorney and the public body, which privilege is hereby acknowledged. General policy matters may not be discussed in a closed session and nothing herein shall be construed to permit a public body to close a meeting that otherwise would be open merely because an attorney employed or retained by the public body is a participant. . . .

On 15 February 2000, an opinion issued as to plaintiff's appeal, *Multimedia Publ'g of N.C., Inc. v. Henderson County*, 136 N.C. App. 567, 525 S.E.2d 786, *review denied*, 351 N.C. 474, 543 S.E.2d 492 (2000), in which this Court held

the record before us is insufficient to determine whether it was appropriate to close the session here. The only information in the record as to the content of the discussions at the closed session comes from the self-serving affidavits of the Board's staff attorney and clerk in attendance. *Without some objective indicia to determine the applicability of the exception here, we are compelled to remand this matter to the trial court for in camera review of the minutes of the closed session. In reviewing the minutes, the trial court must apply the narrow construction of the attorney-client exception articulated herein. Accordingly, the trial court must review the minutes to ensure that neither general policy matters nor the propriety of the moratorium itself were ever discussed during the Board's closed session.* If such matters were in fact discussed, defendants would be in violation of the Open Meetings Law, and plaintiff would be entitled to the minutes of the closed session following a redaction by the

trial court of any matters that were properly within the attorney-client privilege.

*Id.* at 576, 525 S.E.2d at 792 (emphasis added). Thus, this Court "vacate[d] the trial court's orders and remand[ed] th[e] matter for a review *in camera* of the minutes of the closed session," to see if the closed session was warranted pursuant to N.C. Gen. Stat. § 143-318.11(a)(3)'s attorney-client privilege exception. *Id.* at 578, 525 S.E.2d at 793 (emphasis added).

Consistent with this Court's opinion, plaintiff filed a motion requesting an *in camera* review of the minutes in question. On remand and following that review, the trial court found that the Board had

5. . . . failed to maintain full and accurate minutes of the aforesaid closed session which was held pursuant to G.S. 143-318.11 as required by the provisions of G.S. 143-318.10(e), and therefore it is not possible to make a complete determination on whether the Open Meetings Law or the Public Records Act were violated by the Defendants since the Minutes include conclusory statements of the nature of discussions that were conducted in the aforesaid closed session, rather than a general account of the closed session so that a person not in attendance would have a general understanding of what transpired.

6. The directives of the North Carolina Court of Appeals in its Opinion rendered in this Case would dictate that any public agency conducting a closed session should keep full, complete and accurate minutes of that closed session rather than a general account of the same in order for the presiding Superior Court Judge to conduct the *in camera* review ordered by the Court of Appeals. To do otherwise would create an impossible task for the reviewing Superior Court Judge.

Therefore, the trial court concluded that the Board had

violated the Open Meetings Law and the Public Records Act . . . in conducting the closed session held on November 12, 1998, to the extent that the attached copy of the Minutes of such session reflects the discussions which should have been conducted in an open session.

. . .

[Further, the Board] violated the provisions of G.S. 143-318.10(e) of the Open Meetings Law in failing to keep full and accurate Minutes of the closed session . . . .

However, the trial court did find some evidence of privilege within the minutes reviewed; thus, it ordered the minutes of the closed session redacted consistent with its order and delivered to the plaintiff. Finally, the trial court ordered the "[p]laintiff is deemed to be the prevailing party in this matter and the costs of this action, including a reasonable attorney's fee . . . be taxed against the [Board]."

On 5 July 2000, pursuant to the trial court's order, the Board served plaintiff with: (1) a copy of the Board's resolution unsealing the closed session's minutes; (2) a copy of the unredacted minutes of the closed session, and; (3) a copy of the minutes of the closed session as redacted by the trial court. The Board now appeals to this Court.

[1] We begin by acknowledging, based on the parties' arguments to this Court, that the only violations of the Open Meetings Law and the Public Records Act at issue are the Board's alleged abuse of its attorney-client privilege and whether the Board maintained full and accurate minutes and a general accounting of its closed session meeting. Essentially, the Board makes two arguments to this Court. First, the Board argues that the trial court's order was not in compliance with this Court's prior instructions as to this case and as such, was an error of law. Thus, the Board argues that this Court must review this appeal under a *de novo* standard of review.

To support its argument, the Board states that "[d]etermining whether certain discussions f[a]ll within the attorney-client privilege clearly requires the application of legal principles." Thus, where the trial court found that "some of the discussions conducted in the closed session do fall within the attorney-client exception" and others "do not fall within the attorney-client exception," the Board contends that this "determination requiring the exercise of judgment, or the application of legal principles, is more properly classified a conclusion of law." *In re: Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations omitted). Therefore, it is the Board's position that since "[t]he trial court's Order contains absolutely no facts which support the legal conclusions that certain discussions were and were not attorney-client privileged . . . [those conclusions] are fully reviewable upon appeal." We agree.

Where the Board's decision to go into closed session is attacked on the grounds that it violated statutory provisions—as was alleged in plaintiff's earlier appeal to this Court—the trial court was required to apply a *de novo* standard of review because the plaintiff was, in effect, alleging an error of law. *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993). However, where—as now— the Board appeals the trial court's holding that it did commit statutory violations, the burden is on the Board to show that the attorney-client privilege applied. We believe the Board has met its burden of proof.

In its previous opinion in this case, this Court held (and our Supreme Court denied *certiorari*) that

> in light of the general public policy favoring open meetings, the attorney-client exception is to be construed and applied narrowly. *Publishing Co. v. Board of Education*, 29 N.C. App. 37, 47, 223 S.E.2d 580, 587 (1976). This is so notwithstanding the countervailing policy favoring confidentiality between attorneys and clients. In this regard, our legislature has explicitly forbidden general policy matters from being discussed during closed sessions. N.C. Gen. Stat. § 143-318.11(a)(3) (1999). Furthermore, the privilege must be viewed in light of the traditional duties performed by attorneys; "public bodies [cannot simply] delegate responsibilities to attorneys and then cloak negotiations and [closed] sessions in secrecy by having attorneys present." *Fisher v. Maricopa County Stadium Dist.*, 912 P.2d 1345, 1353 (Ariz. Ct. App. 1995) . . . . Thus, discussions regarding the drafting, phrasing, scope and meaning of proposed enactments would be permissible during a closed session. Discussions regarding their constitutionality and possible legal challenges would likewise be so included. *But as soon as discussions move beyond legal technicalities and into the propriety and merits of proposed enactments, the legal justification for closing the session ends.*

> [Finally], and equally as important, the burden is on the government body to demonstrate that the attorney-client exception applies. *Publishing Co.*, 29 N.C. App. at 47, 223 S.E.2d at 587. . . .

*Multimedia*, 136 N.C. App. at 575, 525 S.E.2d at 791-92 (emphasis added). Therefore, the Board argues:

> The ultimate issue for the trial court to determine from the minutes of the closed session was whether the County was attempt-

ing to extend the [attorney-client] privilege "as a mere conduit to suppress public observation of the decision-making process," or whether the closed session was justified pursuant to the attorney-client exception.

*Multimedia*, 136 N.C. App. at 575, 525 S.E.2d at 791.

Upon review of the record of the Board's closed session that is before us, we see that the redacted minutes stated: "Staff Attorney, . . . Jackson informed the Board that we have already been informed that action on a moratorium will be challenged." Then, in its unredacted form, the minutes reveal that there were two sentences added: "She briefly explained the difference between a 'Land Use Ordinance' and a 'Police Power Ordinance,' " and "[t]here was discussion about the legality of making the term longer than 90 days." In reviewing the unredacted minutes, we believe the trial court fulfilled its duty of conducting an *in camera* review. However, we disagree with the trial court's conclusions of law that the closed meeting was not within the attorney-client privilege. *The record reflects no discussion of general policy matters or the propriety of the moratorium at issue.* Thus, we agree with the Board that the discussion above falls completely within the privilege of N.C. Gen. Stat. § 143-318.11, and that the Board minutes sufficiently describe the Board's interaction within the closed session to overcome plaintiff's challenge. Thus, we find the minutes "[]sufficient[ly allow this Court] to determine . . . it was appropriate to close the session here." *Multimedia*, 136 N.C. App. at 576, 525 S.E.2d at 792.

Furthermore, although plaintiff argues that the Board kept only a " 'general account' of what went on in that closed session," we find Professor David M. Lawrence's book, *Open Meetings and Local Governments in North Carolina: Some Questions and Answers* (5th ed. 1998), persuasive. In it Professor Lawrence sets out a clear analysis of the difference between minutes and a general account:

The purpose of *minutes* is to provide a record of the actions taken by a board and evidence that the actions were taken according to proper procedures. If no action is taken, no minutes (other than a record that the meeting occurred) are necessary. The purpose of a *general account*, on the other hand, is to provide some sort of record of the discussion that took place in the closed session, whether action was taken or not. A public body must always prepare a general account of a closed session, even if minutes of that closed session are unnecessary. As a practical

matter, the general account of a meeting at which action is taken will usually serve as the minutes of that meeting as well, if the account includes a record of the action.

Lawrence, *supra*, at 33 (emphasis in original). Based on this standard, we agree with the Board that its minutes of the closed session satisfy both the "full and accurate minutes" and the "general account" requirements of N.C. Gen. Stat. § 143-318.10(e) (1999).

Further, we find the seminal case of *Maready v. City of Winston-Salem*, 342 N.C. 708, 467 S.E.2d 615 (1996) dispositive. There, our Supreme Court opined that:

Generally, "[the minutes] should contain mainly a record of what was *done* at the meeting, not what was *said* by the members." Henry M. Robert, *Robert's Rules of Order Newly Revised* § 47, at 458 (9th ed. 1990). Their purpose is to reflect matters such as motions made, the movant, points of order, and appeals—not to show discussion or absence of action. *See id.* at 459-60.

*Id.* at 733, 467 S.E.2d at 631 (emphasis in original). Additionally, we note that in 1997, following the *Maready* case, our General Assembly amended the applicable statute to require a general accounting of closed sessions:

(e) Every public body shall keep full and accurate minutes of all official meetings, including any closed sessions held pursuant to G.S. 143-318.11. Such minutes may be in written form or, at the option of the public body, may be in the form of sound or video and sound recordings. *When a public body meets in closed session, it shall keep a general account of the closed session so that a person not in attendance would have a reasonable understanding of what transpired. Such accounts may be a written narrative, or video or audio recordings.* Such minutes *and accounts* shall be public records within the meaning of the Public Records Law . . . ; provided, however, that minutes *or an account* of a closed session conducted in compliance with G.S. 143-318.11 may be withheld from public inspection so long as public inspection would frustrate the purpose of a closed session.

N.C. Gen. Stat. § 143-318.10(e) (added verbiage of 1997 amendment in italics). Thus, we believe the unredacted minutes meet the "general account" statutory requirement. Therefore, we hold that the closed session at issue was proper and protected by the Board's attorney-

client privilege, and the trial court erred in concluding that the Board had violated the Open Meetings Law.

**[2]** Nevertheless, when the Board reconvened the public session and "explained that the county attorney had [in the closed session] suggested amendments to the draft of the moratorium previously presented," the Board then had a duty to disclose the minutes of the closed session to the public since it "would [no longer] frustrate the purpose of [the] closed session." N.C. Gen. Stat. § 143-318.10(e). Because the Board failed to disclose the closed meeting's minutes, we hold that the Board did violate the Public Records Act.

While the courts strongly support openness in government, public participation, and the free exchange of ideas, it must be noted that in some instances the right to public access must yield in order to protect other important societal interests. The degree of openness is a matter of public policy that must be settled by legislators in their capacity as elected representatives of the people. This determination necessarily involved a balancing of the public's right to know and the government's interest in maintaining confidentiality to protect its citizens. As delineated in N.C. Gen. Stat. § 143-318.11(a)(3), our General Assembly has struck an appropriate balance in permitting closed sessions "[t]o consult with an attorney . . . to preserve the attorney-client privilege," but in prohibiting discussion of "[g]eneral policy matters" in those closed sessions.

Although the trial court erred in its conclusions of law as to the Board's violations of the Open Meetings Law, it did not err in concluding the Board violated the Public Records Act. Therefore, plaintiff may still be deemed the prevailing party, and the trial court may tax the Board with the costs of this action including reasonable attorney's fees. The trial court's order is

Reversed in part, affirmed in part.

Judges MARTIN and HUDSON concur.