GANNETT PACIFIC CORPORATION D/B/A ASHEVILLE CITIZEN-TIMES PUBLISHING COMPANY, AN HAWAII CORPORATION, AND CHESAPEAKE TELEVISION, INC. T/D/B/A WLOS-TV, A MARYLAND CORPORATION, PLAINTIFFS-APPELLANTS v. CITY OF ASHEVILLE AND COUNTY OF BUNCOMBE, DEFENDANTS-APPELLEES

No. COA05-1304

(Filed 1 August 2006)

## Open Meetings— mediation between city and county—one representative of each—not an official meeting

A mediation between the City of Asheville and Buncombe County was not an official meeting within the Open Meetings law because it was attended by only one representative from each entity rather than a majority. Furthermore, the mediation was not held to evade the spirit or purpose of the Open Meetings Law. N.C.G.S. § 143-318.10(d).

Appeal by plaintiffs from order entered 29 June 2005 by Judge James U. Downs in Superior Court, Buncombe County. Heard in the Court of Appeals 11 May 2006.

*Kelly & Rowe, P.A., by James Gary Rowe, for plaintiffs-appellants.*

*Robert W. Oast, Jr. for defendant-appellee City of Asheville.*

*Westall Gray Connolly and Davis, by Joseph A. Connolly, for defendant-appellee County of Buncombe.*

McGEE, Judge.

Asheville Citizen-Times Publishing Company and WLOS-TV (collectively plaintiffs), appeal the trial court's 29 June 2005 order denying declaratory and injunctive relief in plaintiffs' action against the City of Asheville (the City) and Buncombe County (the County) (collectively defendants). Plaintiffs alleged defendants violated North Carolina's Open Meetings Law.

For some time prior to plaintiffs' filing of the present action, defendants were involved in negotiations concerning the termination of the Regional Water Authority Agreement (the agreement) then in existence between defendants. The agreement pertained to the future supply of water and other services within the City and the County. The City announced on 21 April 2005 that it would hold a special meeting for the purpose of participating in mediation with the County

regarding termination of the agreement. The announcement stated in part:

> It is anticipated that City Council will go into closed session for a substantial part of that meeting in order to consult with an attorney employed by the City about matters with respect to which the attorney client privilege between the City and its attorney must be preserved, including possible litigation, and to give instructions to the attorney concerning the handling of the mediation, pursuant to N.C. Gen. Stat. sec. 143-318.11(a)(3).

Beginning at approximately 8:00 a.m. on 26 April 2005, a majority of the members of the City Council and all of the members of the County's Board of Commissioners (Board of Commissioners) met in separate rooms at the Asheville Renaissance Hotel. Each governmental body voted to close its session in order to consult with its respective attorneys about the forthcoming mediation. Throughout the day, and until approximately 12:00 midnight, the City and the County sent one representative, along with one or more of its attorneys, to meet in mediation with Professor John Stephens (Professor Stephens), a mediator from the Institute of Government at The University of North Carolina at Chapel Hill. While the two representatives and the attorneys met in mediation, the City Council and the Board of Commissioners either stood in recess or discussed no official business. No member of the City Council was present during the Board of Commissioners' meeting, nor was any member of the Board of Commissioners present during the City Council's meeting. The two representatives and the attorneys reported back to their respective bodies. Each body then met separately in a closed meeting to discuss the handling of the mediation. Thereafter, the two representatives and the attorneys returned to the mediation. The mediation, like the City's and the County's meetings in separate rooms, was closed to the public.

The plaintiffs were not allowed into the two separate closed meetings or into the closed mediation at any time. Plaintiffs hand delivered a letter to defendants at approximately 12:15 p.m. on 26 April 2005 demanding that defendants cease the closed meetings and the closed mediation, as defendants were in violation of North Carolina's Open Meetings Law. Defendants refused to terminate the closed meetings or the closed mediation. Plaintiffs filed a complaint on 26 April 2005 seeking declaratory judgment and injunctive relief, including a temporary restraining order and preliminary injunction.

Plaintiffs' requests for a temporary restraining order and a preliminary injunction were denied by the trial court in two separate orders. In an order filed 28 April 2005, the trial court denied plaintiffs' request for a temporary restraining order, finding that the mediation and the meetings had concluded, and therefore no emergency required the issuance of a temporary restraining order. In an order filed 4 May 2005, the trial court denied plaintiffs' request for a preliminary injunction, concluding that defendants did not violate the Open Meetings Law and that plaintiffs were not likely to succeed on the merits of their claim. A hearing was held on the merits of plaintiffs' claims for injunctive relief and declaratory judgment on 16 May 2005. In an order filed 29 June 2005, the trial court made specific findings of fact and concluded:

(1) The mediation process attended by and participated in by the defendants on April 26, 2005, was not an official meeting by either body and open to the public as defined by N.C.G.S. 143-318.10(d).

(2) The format used by the defendants and the procedure followed during the entire mediation process by closing their respective sessions to discuss their positions and legal options were permitted in N.C.G.S. 143-318.11(a)(3).

(3) The conduct complained of by the plaintiffs against the defendants herein did not violate the North Carolina open meetings law.

The trial court thereby denied plaintiffs' request for declaratory judgment and injunctive relief. Plaintiffs appeal.

"It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992). If supported by competent evidence, the trial court's findings of fact are conclusive on appeal. *Finch v. Wachovia Bank & Tr. Co.*, 156 N.C. App. 343, 347, 577 S.E.2d 306, 308-09 (2003). "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 26, 265 S.E.2d 123, 127 (1980). In the present case, plaintiffs do not dispute there was competent evidence to support the trial court's findings of fact. Rather, plaintiffs argue the trial court's three conclusions of law were not proper based on those findings.

It is the public policy of our State that "hearings, deliberations, and actions of [public] bodies be conducted openly." N.C. Gen. Stat. § 143-318.9 (2005). Accordingly, as a general rule, "each official meeting of a public body shall be open to the public, and any person is entitled to attend such a meeting." N.C. Gen. Stat. § 143-318.10(a) (2005). Plaintiffs contend that the mediation engaged in by defendants constituted an official meeting as defined by statute and thus should have been open to the public.

An "official meeting" is defined by N.C. Gen. Stat. § 143-318.10(d) (2005) as

a meeting, assembly, or gathering together at any time or place . . . of a majority of the members of a public body for the purpose of conducting hearings, participating in deliberations, or voting upon or otherwise transacting the public business within the jurisdiction, real or apparent, of the public body. However, a social meeting or other informal assembly or gathering together of the members of a public body does not constitute an official meeting unless called or held to evade the spirit and purposes of this Article.

A "public body" is defined by N.C. Gen. Stat. § 143-318.10(b) (2005) as

any elected or appointed authority, board, commission, committee, council, or other body of the State, or one or more counties, cities, school administrative units, constituent institutions of The University of North Carolina, or other political subdivisions or public corporations in the State that (i) is composed of two or more members and (ii) exercises or is authorized to exercise a legislative, policy-making, quasi-judicial, administrative, or advisory function.

The City Council and the Board of Commissioners were clearly both public bodies as defined by N.C. Gen. Stat. § 143-318.10(b). Any "official meeting" of the City Council or Board of Commissioners, then, must be open to the public, subject to certain exceptions. *See* N.C.G.S. § 143-318.10(a).

The exception at issue in the present case is the attorney-client exception codified at N.C. Gen. Stat. § 143-318.11(a)(3) (2005). The exception provides that a public body may close an official meeting and exclude the public

[t]o consult with an attorney employed or retained by the public body in order to preserve the attorney-client privilege between the attorney and the public body, which privilege is hereby

acknowledged. . . . The public body may consider and give instructions to an attorney concerning the handling or settlement of a claim, judicial action, mediation, arbitration, or administrative procedure.

N.C. Gen. Stat. § 143-318.11(a)(3) (2005). In *Multimedia Pub'g of N.C., Inc. v. Henderson Cty.*, 145 N.C. App. 365, 550 S.E.2d 846 (2001), our Court addressed the attorney-client privilege exception and recognized the competing policy interests inherent in that statutory exception.

> While the courts strongly support openness in government, public participation, and the free exchange of ideas, it must be noted that in some instances the right to public access must yield in order to protect other important societal interest. The degree of openness is a matter of public policy that must be settled by legislators in their capacity as elected representatives of the people.

*Multimedia Pub'g* at 374, 550 S.E.2d at 852. Our General Assembly has addressed the "degree of openness" afforded public bodies by enacting certain statutory exceptions to the Open Meetings Law, including N.C.G.S. § 143-318.11(a)(3), the attorney-client exception. Plaintiffs assign error to the trial court's three conclusions, including its conclusion number two that defendants' procedure of "closing their respective sessions to discuss their positions and legal options [was] permitted in N.C.G.S. 143-318.11(a)(3)." However, in their brief, plaintiffs concede that the separate meetings of the City Council and the Board of Commissioners were official meetings properly closed to the public pursuant to the attorney-client exception. Accordingly, plaintiffs have abandoned this portion of their assignment of error. *See* N.C.R. App. P. 28(b)(6). Plaintiffs bring forward their assignment of error to the trial court's conclusions one and three: that the mediation was not an official meeting mandated to be open to the public and that defendants did not violate North Carolina's Open Meetings Law.

Under N.C.G.S. § 143-318.10(d), the definition of an official meeting has three essential elements: (1) a meeting, assembly, or gathering together, (2) of a majority of the members, (3) of a public body. By the plain language of the statute, in order to be an official meeting, a majority of the members of the public body must be present. In the present case, at no time did more than one member of the City Council or the Board of Commissioners participate in the mediation. Thus, by statutory definition, the mediation was not an official meeting mandated to be open to the public.

GANNETT PACIFIC CORP. v. CITY OF ASHEVILLE

[178 N.C. App. 711 (2006)]

Plaintiffs urge our Court to rely on the second sentence of N.C.G.S. § 143-318.10(d), which provides: "However, a social meeting or other informal assembly or gathering together of the members of a public body does not constitute an official meeting unless called or held to evade the spirit and purposes of this Article." Plaintiffs focus on the second sentence of N.C.G.S. § 143-318.10(d) and argue that the mediation was "called or held to evade the spirit and purposes of [the statute]" and therefore should be considered an official meeting. We disagree with this argument.

First, we disagree with plaintiffs that defendants structured the mediation to evade the spirit and purposes of the Open Meetings Law. The structure and function of the meetings and the mediation do not evidence such an intent. The function of the mediation was to negotiate terms of the agreement. As defendants stated at oral argument, and plaintiffs did not contest, such terms could be accepted only by a majority vote of the members of the City Council and the Board of Commissioners. A majority vote could not have been held until after the two representatives returned from mediation to their respective bodies meeting in separate rooms. As discussed above, although the meetings in the separate rooms were official meetings under N.C.G.S. § 143-318.10(d), those separate meetings fell squarely within the attorney-client exception.

Moreover, reading the second sentence of N.C.G.S. § 143-318.10(d) in its entirety, it is clear that this provision does not apply to the present case. First, the mediation was not a "social meeting or other informal assembly or gathering together." Rather, the mediation was a carefully structured meeting, organized pursuant to advice from Professor Stephens, who also conducted the mediation. Second, nothing in the language of the second sentence of N.C.G.S. § 143-318.10(d) negates the requirement that "a majority of the members of a public body" must be present to constitute an official meeting. N.C.G.S. § 143-318.10(d). At any given time, only one member representing each defendant attended the mediation. Accordingly, under the plain language of the statute, the mediation did not constitute an official meeting.

In conclusion, we hold that the mediation, attended by only one representative from each defendant, was not an official meeting as defined by N.C.G.S. § 143-318.10(d), in that there was no gathering together of a majority of the members of the City Council or of the Board of Commissioners. Further, the mediation, which was not a

social meeting or other informal assembly or gathering together, was not called or held to evade the spirit or purposes of the Open Meetings Law. Accordingly, we uphold the trial court's conclusions of law and affirm its 29 June 2005 order.

Affirmed.

Judges ELMORE and STEELMAN concur.