CALABRIA, Judge.
*287 Where the meeting of the town council was held openly and in view of the public, the trial court did not err in concluding that it did not violate the Open Meetings Law. Where the only evidence of unreasonable limitation of opportunity for access to the meeting was the fact that the venue could not accommodate all present, the trial court did not err in concluding that the town council did not violate the Open Meetings Law.
Where the trial court declared the contract for demolition of a building null and void, and the building was subsequently destroyed in a fire, the issue of whether the trial court erred in granting a partial directed verdict is moot. Where plaintiffs failed to demonstrate an abuse of discretion, the trial court did not abuse its discretion in declining to award attorney's fees. We affirm in part, and dismiss in part.
I. Factual and Procedural Background
The Old Hildebran School ("Old School") was built in 1917, and has since been viewed as a town landmark. Two additions to the Old School were completed in 1924 and 1937, and in the 1950s a breezeway was added to connect the older portions of the building to the newer high school structures. The Old School functioned as both a Junior High and High School from its opening in 1917 until 1987, when new school buildings were built in town. The Town of Hildebran ("Town") acquired the Old School from the Burke County Board of Education in 1988.
*288 The Old School was first discussed at a 22 September 2014 special meeting of the Hildebran Town Council ("Town Council"). At this meeting, Council Member Lee Lowman ("Lowman") brought up the physical state of the school, expressing his belief that the Old School was beyond repair and was both a safety and fire hazard. Council Member Jamie Hollowell ("Hollowell") then requested that "hard copy bids" be solicited for costs of both demolition and repair of the school, in order to make an informed decision. Virginia Cooke ("Cooke"), Council Member and town mayor, stated that she had solicited a quote for costs to demolish the school.
The Town Council next discussed the Old School at its 27 October 2014 regularly scheduled meeting. There were two discussions concerning the Old School at the 27 October 2014 meeting. First, the Town Council considered a resolution that would exempt it from following the formal bidding process for projects costing less than ninety thousand dollars, which failed. Second, the Town Council entered into a closed session to "discuss matters relating to the location or expansion of industries or other businesses in the area served by the public body, including agreement on a tentative list of economic development incentives that may be offered by the *764 public body in negotiations" citing N.C. Gen. Stat. § 143-318.11(a)(4). Later, at trial, the evidence showed that the Old School's future was discussed during the closed session rather than a discussion pertinent to "the location or expansion of industries or other businesses[.]"
The Town Council next discussed the Old School at the regularly scheduled meeting on 24 November 2014, where a presentation was given regarding the possibility of historic rehabilitation. The Old School was otherwise not discussed any further at the 24 November 2014 meeting.
Public interest in the fate of the Old School began to grow in late November and early December of 2014. The trial court found that "at least one Council member and the Mayor knew that public interest in the fate of the old school building was very high[.]" At the Town Council's December 2014 regular meeting, Cooke announced that there would be a public forum to allow citizens to discuss options for the Old School, and the forum was scheduled for 8 January 2015, as a special meeting.
At the 8 January 2015 special meeting, Cooke announced which portions of the school would be "affected" by demolition. Twenty-one members of the public spoke, each addressing opinions as to the fate of the school, with nineteen of the twenty-one speakers in favor of saving *289 the Old School. The Town Council held another special meeting on 23 January 2015, at which the school was not discussed.
The Town Council's next meeting was its regularly scheduled meeting on 26 January 2015. The Town Council posted the agenda for this meeting, as was its routine, on its website. The published agenda for the 26 January 2015 Town Council meeting showed that the Town Council would discuss the Old School, but there was no indication that the Town Council would vote upon the Old School's fate at the meeting. Even though there was no vote scheduled on the agenda, the meeting room was full for the 26 January 2015 meeting. Around twenty to twenty-five members of the public were permitted to enter the meeting room to voice their opinions, however they were not permitted to remain in the room once having done so. At least one member of the public and one Council Member requested the meeting to be relocated to the Town auditorium, a standalone structure adjacent to the Town Hall complex. The relocation request was denied. The reason for denying the request was that a change in location would have required the Town Council to give at least forty-eight hours public notice, pursuant to N.C. Gen. Stat. § 143-318.12(a).
The evening before the 26 January 2015 meeting, Lowman communicated with Cooke and all members of the Council, except for Councilman Wendell Hildebran ("Hildebran"). The purpose of the conversations between Lowman and the others was to (1) discuss his intention to amend the agenda and call for a vote as to the fate of the school and (2) determine whether the Council Members would support his effort to amend the agenda and call for a vote. Lowman did not contact Hildebran because he knew he would not support Lowman's amendment to the agenda, and Lowman believed that Hildebran would inform the public of the plan to amend the agenda.
Based on Lowman's conversations with Cooke and other Town Council members, Lowman made a motion to amend the agenda at the 26 January 2015 meeting from "Original School Building Discussion" to "Original School Building Discussion/Vote[.]" The trial court found that "[p]rior to the meeting held on January 26, 2015, the public did not have knowledge that the agenda would be amended or the nature of the amendment to the agenda." Hildebran requested that the vote be tabled until the Town's 23 March 2015 meeting.
The motion to amend the agenda passed, and Hildebran was the only member to oppose the amendment. The agenda was further amended to add "Old School Building Demolition Quotes under Old *290 Business" because Cooke had informed Lowman, prior to the 26 January 2015 meeting, that she had received demolition quotes. The Town voted to demolish the Old School and to award the demolition contract to Foothills Recycling & *765 Demolition, LLC ("Foothills") on 26 January 2015.
On 24 February 2015, Hildebran Heritage & Development Association, Inc. ("HHDA"), and Citizens United to Preserve the Old Hildebran School ("Citizens United") (collectively, "plaintiffs"), filed a complaint against the Town and Foothills (collectively, "defendants"), alleging breach of contract, failure to comply with N.C. Gen. Stat. § 143-129 et seq. (the procedure for government bodies taking bids on public contracts), and failure to comply with N.C. Gen. Stat. § 143-318.9 et seq. (the "Open Meetings Law"). In addition, plaintiffs sought a temporary restraining order and a preliminary injunction to prevent the demolition of the Old School. On 20 March 2015, Foothills filed its answer and motions to dismiss, alleging failure to state a claim upon which relief can be granted, lack of capacity by Citizens United to file a lawsuit, and plaintiffs' lack of standing. On 24 April 2015, the Town filed its answer.
A bench trial was held before the Superior Court of Burke County. At trial, at the conclusion of plaintiffs' evidence, defendants moved for a partial directed verdict on the issue of the validity of the contract between the Town and Foothills. On 3 September 2015, the trial court entered an order on this motion, granting it in favor of defendants, and holding that "the evidence ... is insufficient as a matter of law to establish that the contract between the Defendants to demolish the School Building is invalid[.]"
On 11 August 2015, the trial court entered its judgment on plaintiffs' complaint. It first noted that plaintiffs had alleged four different violations of the Open Meetings Law: (1) that the Town Council had discussed remodeling or destroying the Old School during the 27 October 2014 closed session meeting; (2) that the Town Council had failed to provide reasonable access to the 26 January 2015 meeting; (3) that Lowman had engaged in one-on-one discussions outside of the open sessions; and (4) that the Town Council had voted to amend its agenda at the 26 January 2015 meeting. With respect to the first allegation, the trial court acknowledged that the discussion during the closed session meeting on 27 October 2014 constituted a violation of the Open Meetings Law. Nonetheless, the trial court concluded that, notwithstanding this violation, "the vote of the Defendant's Town Council to demolish the old school building and the award of the demolition contract to the Defendant Foothills should not be declared null and void."
*291 With respect to plaintiffs' remaining allegations, the trial court concluded that the measures taken to make the 26 January 2015 meeting accessible to the public were "reasonable under all the circumstances existing at that time and substantially complied with the Open Meetings Law[,]" that the evidence with respect to the one-on-one discussions and vote to amend was "insufficient as a matter of law to establish that any of these other acts were in violation of the Open Meetings Law[,]" and that therefore defendants were entitled to a directed verdict with respect to these allegations.
The trial court then considered whether to award attorney's fees. The court concluded that, as both parties had succeeded on a substantial issue in the case, both were "prevailing parties" under statute. In its discretion, the court declined to award attorney's fees to either side.
From the trial court's order granting a partial directed verdict, and from the trial court's judgment, plaintiffs appeal.
II. Directed Verdict
In their third argument, which we choose to address first, plaintiffs contend that the trial court erred in entering a directed verdict in favor of defendants as to the claim that the demolition contract was null and void. Due to newly revealed information, however, we hold that this issue is moot.
At oral arguments before this Court, it was revealed by the parties that the Old School, during the pendency of the appeal, had caught fire and burned down. The fact that the parties did not consider this information to be pertinent to be brought to the attention of this Court is itself troubling. This information would not have been brought to the attention of the Court, but for a fortuitous question from the Court.
*766 Where parties contract with reference to specific property and the obligations assumed clearly contemplate its continued existence, if the property is accidentally lost or destroyed by fire or otherwise, rendering performance impossible, the parties are relieved from further obligations concerning it.... Before a party can avail himself of such a position, he is required to show that the property was destroyed, and without fault on his part.
Sechrest v. Forest Furniture Co. , 264 N.C. 216, 217, 141 S.E.2d 292, 294 (1965) (citation and quotations omitted). In the instant case, it is clear that the Old School was completely destroyed by fire, through no fault of *292 either party. Likewise, the contract for the demolition of the Old School clearly contemplated its continued existence, at least until the contract was completed.
Had this information been available at trial, it would clearly have supported the trial court's determination that the contract was null and void. Performance of the contract was rendered impossible by the destruction of the Old School by fire. However, the record contains no evidence as to when the Old School was destroyed by fire; moreover, the trial court's order on the motion for a directed verdict seems to imply that, as of the entry of that order, the trial court was unaware of the Old School's destruction, had the fire even occurred at that time. As such, this new information has no bearing on the trial court's order.
It does, however, have bearing on the ultimate disposition of this issue. The destruction of the Old School renders performance under the contract impossible. Certainly, even if the contract was not null and void when the trial court entered its order, the contract is null and void now. Even were we to agree with plaintiffs' contentions and remand this issue, the outcome would be the same; the trial court would grant a directed verdict, holding the contract to be null and void as a result of the destruction of the Old School. We therefore hold that this matter is moot, and dismiss this argument accordingly.
III. The Open Meetings Law
In their first and second arguments, plaintiffs contend that the Town violated the Open Meetings Law, both by purposefully conducting sub-quorum meetings, and by failing to provide reasonable public access. We disagree.
A. Standard of Review
"Issues of statutory construction are questions of law, reviewed de novo on appeal." McKoy v. McKoy , 202 N.C.App. 509, 511, 689 S.E.2d 590, 592 (2010). "Whether a violation of the Open Meetings Law occurred is a question of law. We therefore apply de novo review to this portion of the decision of the trial court." Knight v. Higgs , 189 N.C.App. 696, 700, 659 S.E.2d 742, 746 (2008).
B. One-on-One Meetings
First, plaintiffs contend that the Town violated the Open Meetings Law by permitting Lowman to conduct one-on-one meetings.
It is the public policy of our State that "hearings, deliberations, and actions of [public] bodies be conducted openly."
*293 N.C. Gen. Stat. § 143-318.9 (2005). Accordingly, as a general rule, "each official meeting of a public body shall be open to the public, and any person is entitled to attend such a meeting." N.C. Gen. Stat. § 143-318.10(a) (2005).
Gannett Pac. Corp. v. City of Asheville , 178 N.C.App. 711, 714, 632 S.E.2d 586, 588 (2006) ; see also N.C. Gen. Stat. §§ 143-318.9 and -318.10(a) (2015). Plaintiffs contend that the Town, a public body, violated this public policy, in that Lowman contacted members of the Town Council individually and in private, rather than openly.
Plaintiffs attempt to analogize these facts with those in News & Observer Publishing Co. v. Interim Bd. of Educ. , 29 N.C.App. 37, 223 S.E.2d 580 (1976). In that case, the defendant created a special "committee of the whole" in order to enact business without invoking the Open Meetings Law. This Court acknowledged that certain grounds might exist to form a closed session committee of the whole, such as theft or embezzlement, but held that "we do not think a board can evade the provisions of statutes requiring its meetings to be open to the public merely by *767 resolving itself into a committee of the whole." Id . at 49, 223 S.E.2d at 588.
We hold, however, that plaintiffs' analogy is inapplicable. In News & Observer , the defendant board met to conduct votes in closed session, in violation of the Open Meetings Law. Plaintiffs do not allege, however, that Lowman conducted any business during these one-on-one meetings. Rather, Lowman discussed with other members of the Town Council his plan to present a motion to amend at the meeting proper. Even assuming arguendo that Lowman's conduct was designed to avoid the protections of the Open Meetings Law, the vote itself took place at the 26 January 2015 meeting, at which the public was present, minutes were taken, and the votes of the Town Council were recorded. Unlike News & Observer , in which a closed session was held in violation of the Open Meetings Law, this meeting was held in view of the public, with members of the public able to speak, and with records taken of the proceedings. As such, we hold that the trial court did not err in concluding that the Town did not violate the Open Meetings Law.
C. Reasonable Public Access
Plaintiffs further contend that the Town failed to provide reasonable public access to the 26 January 2015 meeting.
Pursuant to the Open Meetings Law, the court must consider a defendant's actions "according to the standard of reasonableness of opportunity *294 for public access to the meetings." Garlock v. Wake Cty. Bd. of Educ. , 211 N.C.App. 200, 201, 712 S.E.2d 158, 162 (2011). Plaintiffs contend that the venue used for the meeting was inadequate to address the public's interest, that between twenty and twenty-five people were forced to stand outside the meeting room, and that no equipment was available to permit these excess attendees to observe or hear what transpired during the meeting. Plaintiffs contend that whether the opportunity for public access was reasonable is a question of fact for the jury, and that the trial court erred in ruling on it as a matter of law.
However, "[w]hether a violation of the Open Meetings Law occurred is a question of law." Knight , 189 N.C.App. at 700, 659 S.E.2d at 746. As such, it was appropriate for the trial court to determine this issue on a motion for directed verdict. The trial court's order set out numerous facts, which are supported by the evidence, in support of its determination as a matter of law that opportunity for public access was reasonable, and that no violation of the Open Meetings Law resulted. We agree. We decline to find that a lack of overflow seating or external speakers, absent more, constitutes an unreasonable failure of access. We therefore hold that the trial court did not err in holding, as a matter of law, that there was reasonable opportunity for access to the meeting under the Open Meetings Law.
IV. Attorney's Fees
In their fourth argument, plaintiffs contend that the trial court erred in declining to award attorney's fees based upon defendants' purported violation of the Open Meetings Law. We disagree.
A. Standard of Review
"When an action is brought pursuant to [the Open Meetings Law], the court may make written findings specifying the prevailing party or parties, and may award the prevailing party or parties a reasonable attorney's fee, to be taxed against the losing party or parties as part of the costs." N.C. Gen. Stat. § 143-318.16B (2015). "Such an award is discretionary under the statute." Knight , 189 N.C.App. at 704, 659 S.E.2d at 748.
B. Analysis
In its judgment, the trial court found that both plaintiffs and the Town succeeded on significant issues in the litigation, and therefore found that "the Plaintiffs and the Defendant [Town of] Hildebran are both prevailing parties." In an exercise of its discretion, the trial court declined to *295 award attorney's fees, and ordered each party to bear its own costs. On appeal, plaintiffs contend this ruling was an abuse of discretion.
Plaintiffs' argument is premised on the fact that "the directed verdict granted in favor of the Town was erroneous." However, we have already held that the trial court did *768 not err in granting a directed verdict in favor of defendants. Plaintiffs present no additional arguments to support their contention that the trial court abused its discretion in declining to award attorney's fees. We hold, therefore, that the trial court did not abuse its discretion.
V. Conclusion
The trial court did not err in concluding as a matter of law that the Town substantially complied with the Open Meetings Law, including providing reasonable access to the 26 January 2015 meeting. The trial court did not abuse its discretion in declining to award attorney's fees. We dismiss plaintiffs' arguments with respect to the trial court's order for a partial directed verdict.
AFFIRMED IN PART, DISMISSED IN PART.
Judge TYSON concurs.
Judge BRYANT concurs in part and dissents in part.