BRYANT, Judge, concurring in part and dissenting in part.
Because I believe the trial court erred in directing a verdict when it concluded, contrary to the facts, that one-on-one meetings conducted by Councilman Lowman did not violate the Open Meetings Law, I respectfully dissent from that portion of the majority opinion.
In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor.
Turner v. Duke Univ. , 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989) (emphasis added) (citation omitted).
*296 Allegations that a party violated the Open Meetings Law are considered by the Superior Court in its role as a trier of fact.
"It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." Shear v. Stevens Bldg. Co. , 107 N.C.App. 154, 160, 418 S.E.2d 841, 845 (1992). If supported by competent evidence, the trial court's findings of fact are conclusive on appeal. Finch v. Wachovia Bank & Tr. Co. , 156 N.C.App. 343, 347, 577 S.E.2d 306, 308-09 (2003). "Conclusions of law drawn by the trial court from its findings of fact are reviewable de novo on appeal." Food Town Stores v. City of Salisbury , 300 N.C. 21, 26, 265 S.E.2d 123, 127 (1980).
Gannett Pacific Corp. v. City of Asheville , 178 N.C.App. 711, 713, 632 S.E.2d 586, 588 (2006). Whether a violation of the Open Meetings Law occurred is a question of law. We therefore apply de novo review to this portion of the decision of the trial court.
Knight v. Higgs , 189 N.C.App. 696, 699-700, 659 S.E.2d 742, 745-46 (2008).
North Carolina's public policy requires that hearings, deliberations, and actions of public bodies be conducted openly. N.C. Gen. Stat. § 143-318.9 (2015). As a general rule, "each official meeting of a public body shall be open to the public, and any person is entitled to attend such a meeting." N.C. Gen. Stat. § 143-318.10(a) (2015). A "public body" is defined as
any elected or appointed authority, board, commission, committee, council, or other body of [North Carolina], ... or other political subdivisions or public corporations in [North Carolina] that (i) is composed of two or more members and (ii) exercises or is authorized to exercise a legislative policy-making, quasi-judicial, administrative, or advisory function.
Id. § 143-318.10(b).
*297 An "official meeting" is defined as "a meeting, assembly, or gathering together at any time or place or the simultaneous communication by conference telephone or other electronic means of a majority of the members of *769 a public body...." Id. § 143-318.10(d). "By the plain language of the statute, in order to be an official meeting, a majority of the members of the public body must be present." Gannett Pac. Corp. , 178 N.C.App. at 715, 632 S.E.2d at 589. "However, a social meeting or other informal assembly or gathering together of the members of a public body does not constitute an official meeting unless it is called or held to evade the spirit and purposes of this Article ." N.C.G.S. § 143-318.10(d) (emphasis added).
At trial, Councilman Lowman was called as a witness by plaintiff and testified at length about the propriety of the "one-on-one" discussions with council members and the mayor:
Q. Have you had any occasions at any-at any point in time ... to discuss a matter pertaining to the demolition of the old school building one-on-one with, say, the mayor?
A. I have talked one-on-one with the mayor and one-on-one with the council.
Q. And are there also examples where other members of the council have talked one-on-one with the mayor about the fate of the old school building?
A. Yes.
Q. And those would be one-on-one discussions that were had individually, rather than calling a meeting to talk about it collectively?
A. Correct. A meeting is considered three, three of us together, three council or two council and the mayor-or three of us and the mayor.
Q. And you're aware, then, that you can have those one-on-one discussions-
A. Uh-huh.
Q. -and avoid calling a meeting.
A. Correct.
Q. And if the mayor's having discussions or if you're having discussion one-on-one with a council member about *298 the fate of the old building, you can do that individually and avoid having to call a meeting and have the public sit in and listen, correct?
A. That is correct.
Q. And that's happened, has it not, with regard to the demolition of the old school building?
A. It has, both, demolition and rehab.
Q. But, but, in particular, it has in terms of demolition, correct?
A. That is correct.
Q. And, again, no member of the public's going to be privy to those one-on-one discussions that you're having regarding demolition of the building, for example, with the mayor, correct?
A. That is correct.
Q. No member of the public's going to be privy to the information you're discussing ... one-on-one with members of the council with the mayor, correct?
A. That is correct.
Q. Have you had meetings where you met with two of the other council members?
A. No.
Q. The reason you haven't done that is because that would constitute a meeting, correct?
A. That is correct.
Q. And you don't want to do that, correct?
A. That is correct.
....
Q. And you didn't want to have it be a matter of public record, that you planned on amending the agenda, did you?
A. I didn't make that call until the week of the meeting.
*299 Q. But you certainly had enough time to discuss that one-on-one with those council members.
A. I asked them if they were ready to vote, yes.
Q. And that was outside of the public meeting.
A. Correct.
Q. And that was pertaining specifically to the demolition of the old school building.
A. Demolition versus the rehab. I was not swaying their votes. It was just were they ready.
Q. And you had that discussion.
*770 A. Yes.
Q. Outside of a public meeting.
A. Yes.
Q. And you knew that there would be no record of that that would be available to the public.
A. That is correct.
....
Q. And, ultimately, the council decided and voted to allow you to amend the agenda, correct?
A. That is correct.
Q. And did each of those members that you had those one-on-one conversations with-did they vote in support of amending the agenda?
A. As far as I know, yes. Except for one.
Q. Did you have a one-on-one conversation with Mr. Hildebrand [sic] beforehand?
A. No, I knew where he stood.
Q. So the reason you didn't have a conversation with him is because you knew he'd be opposed to amending the agenda.
A. There was-He was opposed and I was for. It was plain as day, yes.
*300 Q. Okay. So you avoided having that conversation with him based upon that.
A. I don't speak to Mr. Hildebrand [sic].
Q. Well, whether you do or not, the reason you didn't have the discussion with him, as you did with the others that voted for your position to amend the agenda, was because you knew he wouldn't be in favor of it, correct?
A. That is correct.
Q. And he would let the public know about it, correct?
A. Correct.
The trial court made the following relevant findings of fact:
14. Prior to the meeting on January 26, 2015, Councilman Lee Lowman contacted certain other Council members one-on-one to inquire about amendment of the agenda for the January 26, 2015 meeting to include a vote to demolish the old school building.
15. Councilman Lee Lowman contacted certain other Council members one-on-one to avoid holding an official meeting and to prevent such communications from being open to the public.
16. Councilman Lee Lowman intentionally did not contact the one Council member that he knew held an adverse position to his own.
17. Councilman Lee Lowman indicated that it was typical for Council members to have one-on-one communications to conduct the business of the Town of Hildebran.
(Strike-outs in original) (emphasis added).
The trial court's findings of fact, particularly that Councilman Lowman (1) contacted other council members one-on-one specifically "to avoid holding an official meeting ," and (2) did not contact Councilman Hildebran as he knew he held an adverse position, are clearly based on evidence in the record that the other council members were called "to ensure that they had the vote to amend the agenda, which would allow them to vote on the school building demolition without any prior notice to the public." Councilman Lowman admitted that he didn't contact Councilman Hildebran because he knew Hildebran held an adverse *301 position, and if Lowman asked Hildebran about voting to amend the agenda, he would alert the public. The only reasonable inference to be drawn from these facts is that Councilman Lowman's action of contacting other council members individually was to evade the purpose of the Open Meetings Law.
Thus, because the findings by the trial court support a conclusion that Councilman Lowman's actions were purposeful and undertaken in order to evade the purpose and spirit of the Open Meetings Law and the council's obligation to conduct meetings in public, I submit the trial court erred in concluding the above-described actions did not amount to a violation. Therefore, I respectfully dissent.